

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-15-2000

# United States v. Mannino

Precedential or Non-Precedential:

Docket 98-1748

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"United States v. Mannino" (2000). *2000 Decisions.* Paper 96.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/96

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 15, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 98-1748

UNITED STATES OF AMERICA

v.

IGNAZIO ANTONINO MANNINO,
a/k/a Nino
(D.C. No. 89-cr-00003-2)

UNITED STATES OF AMERICA

v.

EMANUELE SALVATORE MANNINO,
a/k/a Sal
(D.C. No. 89-cr-00003-4)

Ignazio Antonino Mannino and
Emanuele Salvatore Mannino,
        Appellants

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Crim. Nos. 89-cr-00003-2 and 89-cr-00003-4)
District Judge: Hon. Louis Charles Bechtle

Argued: November 1, 1999

Before: NYGAARD, McKEE, and ROSENN, Circuit Judges

(Filed: May 15, 2000)

Peter Goldberger, Esq. (argued)
Law Office of Peter Goldberger
50 Rittenhouse Place
Ardmore, PA 19003-2276

 Attorney for Appellants

Richard P. Barrett, Esq. (argued)
Robert E. Courtney, III, Esq.
Office of the United States
 Attorney
615 Chestnut Street
Philadelphia, PA 19106

 Attorneys for Appellee

OPINION OF THE COURT

McKEE, Circuit Judge.

Ignazio Antonino Mannino ("Tony") and Emanuele
Salvatore Mannino ("Sal") appeal the denial of petitions they
filed under 28 U.S.C. S 2255 in which they sought to
vacate, set aside or correct sentences imposed on them
following convictions for charges arising from their
involvement in a heroin distribution conspiracy. We hold
that the defendants' sentencings did not conform to
Amendment 78 of the United States Sentencing Guidelines
or our holding in United States v. Collado, 975 F.2d 985 (3d
Cir. 1992), and we will therefore vacate their sentences and
remand for resentencing consistent with this opinion.

I.

The heroin importation scheme the defendants were
involved in is described in detail in United States v.
Gambino, 728 F.Supp. 1150 (E.D. Pa. 1989), United States
v. Gambino, 926 F.2d 1355 (3d Cir. 1991), cert. denied, 502
U.S. 956 (1991), and in the district court's Memorandum
Opinion denying the defendants' S 2255 petitions in the
instant case. Accordingly, we need only describe the
defendants' involvement to the extent that it is helpful to
our discussion of the issue before us.

In January 1989, a federal grand jury indicted eighteen individuals, including Tony and Sal Mannino, in connection with a heroin distribution organization that was based in New York City. Tony and Sal were subsequently tried and convicted of conspiracy to import and distribute heroin in violation of 21 U.S.C. SS 963 and 846. Sal Mannino was also convicted of money laundering in violation of 18 U.S.C. S 1956(a)(1). On December 6, 1989, Tony was sentenced to a period of incarceration of 324 months (27 years), and Sal was sentenced to 216 months (18 years) incarceration the following day.[1] Tony's base offense level under the Sentencing Guidelines was calculated as 36 in the Pre-Sentence Investigation Report ("PSI") because his offense involved at least 30 kilograms of heroin.[2] See PSI of Tony Mannino at P 62. However, that was increased by four levels because the court found that he was also a"leader" under the guidelines. See U.S.S.G. S 3B1.1(a). Accordingly, Tony's total offense level was 40. Since he had no prior criminal record, his criminal history category was I; yielding a sentencing range of 292-365 months. Sal's base offense level in his PSI was also 36, and this was also based upon evidence that the Gambino conspiracy had distributed between 10 to 30 kilograms of heroin during the life of the conspiracy. Sal also had a criminal history category of I, but he did not receive an upward adjustment. Accordingly, the Sentencing Guideline table yielded a sentencing range of 188-235 months imprisonment for Sal.

At sentencing, counsel for both defendants argued that the sentencing court could not determine the quantity of drugs each defendant was responsible for under the guidelines merely by relying upon the quantity of drugs attributed to the Gambino conspiracy. At Tony's sentencing, the court responded as follows:

        I think because we have a conspiracy charge, kind of
_____

1. The court also imposed a term of five years supervised release, a $25,000 fine, and special assessments in the amount of $100 for Tony and $150 for Sal.

2. Section 2D1.1(c) provides for a base offense level of 36 when the quantity of heroin for which a defendant is found accountable falls between 10 and 30 kilograms.

3

an ongoing offense, I think even as a legal matter, even a subsequent involvement in a conspiratorial activity can make a person liable under the law.

* * *

On page 19 [of the PSI], where it . . . states that you report that there was no evidence connecting [Tony Mannino] with Simone Zito importations. We will not change it; but I think your view of it is that, while that's all right from the view point of the law of conspiracy, it is not all right when we determine involvement and participation. . . .

[Defense counsel]: Exactly, Your Honor.

[The court]: . . . I think we should preserve your position, but the court won't change [the PSI].

App. 100a, 107. A similar exchange occurred at Sal Mannino's sentencing:

[The court]: This conspiracy went on for four years . . . . [T]he evil of a conspiracy is that it does go on. And that's why a person who joins late must, when they join late, they are liable for what went on before, if they do it knowingly and willfully. . . .

I don't think the guidelines, Mr. Fitzpatrick . . . . I don't think you will change the law of conspiracy so long as there are such insidious impacts upon the community . . . That's why those who join on the last day are liable for the first day and throughout. That's the problem here. And he is not charged with handling a kilo of this, just the conspiracy. I'm not arguing with you, I'm just giving a response to what I think are your good-faith beliefs about your expectation to change the law of conspiracy.

App. 137-38a, (emphasis added). Both Tony and Sal filed a direct appeal after the court rejected these arguments and imposed sentence. However, even though both defense counsel had preserved the issue of the quantity of heroin that could be attributed to their respective clients under the guidelines at sentencing, neither counsel raised the issue on direct appeal where we affirmed both of the convictions

4

and sentences. See United States v. Gambino, 926 F.2d 1355 (3d Cir. 1991).

The defendants subsequently filed petitions pursuant to 28 U.S.C. S 2255, arguing inter alia that the sentencing court violated their Fifth Amendment due process rights by misapplying the "relevant conduct" provisions of the United States Sentencing Guidelines as amended, and that appellate counsel had been ineffective in failing to raise the issue on direct appeal. The petitions were referred to a Magistrate Judge who issued a Report and Recommendation in which she concluded that the challenged sentencings failed to conform to the requirements of Amendment 78 of the Sentencing Guidelines, and that defendants' prior counsel had been ineffective in failing to raise the issue on direct appeal. The Magistrate Judge recommended that the court conduct new sentencing hearings and make individualized findings regarding each defendant's respective role in the conspiracy in order to properly decide how much heroin to attribute to each of them. However, the court rejected the Report and Recommendation and denied the defendants' S 2255 petitions.

The court held that the claims were defaulted because neither defendant had raised that issue on direct appeal, and neither could demonstrate the cause and prejudice for that default that was the condition precedent to a decision on the merits of their S 2255 petitions. See United States v. Frady, 456 U.S. 152, 168 (1982). The Court also concluded that the defendants could not establish the prejudice necessary to a decision on their petitions because the PSIs and the sentencing transcripts supported the sentencing court's finding that they were each responsible for at least 10 kilograms of heroin, if not for the entire 30 kilograms set forth in the counts of conviction. Accordingly, the court ruled that the petitions of both defendants lacked merit, and both petitions were dismissed. The Manninos thenfiled this joint appeal, and a panel of this court granted a certificate of appealability to review their claim that the

5

sentencing court erred in failing to excuse their procedural default under S 2255, and in applying U.S.S.G.S 1B1.3.3

II.

As noted above, the defendants did not challenge the sentencing court's attribution of the heroin on direct appeal. In United States v. Essig, 10 F.3d 968, 977 (3d Cir. 1993), we held that the failure to raise a Sentencing Guidelines issue on direct appeal results in a waiver of that issue. Such a procedural default will not be set aside under S 2255 unless the petitioner can establish cause for the default and that prejudice resulted from it. Id . at 979. Accordingly, we must first address the government's contention that the defendants' failure to raise this issue on direct appeal precludes our review of the merits of the petitions.

The Manninos argue that appellate counsel was ineffective in failing to appeal the trial court's application of the Sentencing Guidelines, and that such ineffectiveness satisfies the "cause" prong of Frady. It is, of course, well established that a successful showing of ineffective assistance of counsel may satisfy the "cause" prong of a procedural default inquiry. See Coleman v. Thompson, 501 U.S. 722, 753–54 (1991); Lines v. Larkin, ___ F.3d ___, 2000 WL 291412, at *12 (3d Cir. 2000); and United States v. Sanders, 165 F.3d 248, 250 (3d Cir. 1999). However, it can only do so if the ineffectiveness rises to the level of a constitutional deprivation under Strickland v. Washington, 466 U.S. 668 (1984). Coleman, 501 U.S. at 753. To establish such a deprivation the defendants mustfirst demonstrate that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688.4 If that is established, defendants must then show

_____

3. We have jurisdiction pursuant to 28 U.S.C.SS 1291 and 2253(a), and we exercise plenary review. United States v. Lloyd, 188 F.3d 184, 186 (3d Cir. 1999).
4. Although the Strickland test was initially formulated in the context of trial counsel's stewardship, it applies with equal force to our analysis of
the defendants' challenge to the performance of appellate counsel. See Diggs v. Owens, 833 F.2d 439, 444–45 (3d Cir. 1987); see also McKee v. United States, 167 F.3d 103, 106 (2d Cir. 1999); United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995); United States v. Merida, 985 F.2d 198, 202 (5th Cir. 1993).

that they were prejudiced by counsel's deficient performance. Id. at 687. This requires that they

demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Thus, we can not reach the merits of the defendants' claim here unless they can first establish that they were denied effective assistance of appellate counsel under Strickland. However, given the nature of theirS 2255 claim, it is not possible to resolve the Strickland claim without first determining if their challenge to the court's application of the Sentencing Guidelines is meritorious. If it is not meritorious, the defendants can not successfully argue that counsel's failure to raise the claim on direct appeal denied them their constitutional right of representation. Accordingly, we will first discuss their Strickland claim. That claim rests upon Amendment 78 of the Sentencing Guidelines and our decision in United States v. Collado, 975 F.2d 985 (3d Cir. 1992). Amendment 78, which became effective on November 1, 1989 (one month prior to the Manninos' sentencing), amended Application Note 1 to S 1B1.3 and provides in relevant part:

> In the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant "would be otherwise accountable" also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant....Where it is established that the conduct was neither within the scope of the defendant's agreement, nor was reasonably foreseeable in connection with the criminal activity the defendant agreed to jointly undertake, such conduct is not included in establishing the defendant's offense level under this guideline.

In Collado, we set forth the proper analysis for sentencing courts to use when deciding whether to increase a defendant's sentence based upon conduct of an accomplice or co-conspirator. We stated:

> The language of this note indicates that, rather than evaluating accomplice attribution in light of the scope

7

of the conspiracy as described in the count of conviction and the defendant's awareness of the possibility that co-conspirators would distribute amounts in addition to those amounts distributed by the defendant, courts should look to the defendant's role in the conspiracy. Specifically, the note instructs courts to assess accomplice attribution by determining whether the co-conspirator's conduct was `in furtherance of the ... jointly-undertaken ... activity' (as opposed to the conspiracy as described in the count of conviction), `within the scope of the defendant's agreement,' and `reasonably foreseeable in connection with the criminal activity the defendant agreed to undertake.' U.S.S.G. S 1B1.3, application note 1 (emphasis added). In our view, this language indicates that whether a particular defendant may be held accountable for amounts of drugs involved in transactions conducted by a co-conspirator depends upon the degree of the defendant's involvement in the conspiracy and, of course, reasonable foreseeability with respect to the conduct of others within the conspiracy.

Collado, 975 F.2d at 991-92.

Here, the sentencing court was clearly influenced by the size and duration of the criminal conspiracy the defendants were part of and the quantity of drugs charged to the conspiracy. As noted above, during Sal's sentencing hearing, the court stated: "This conspiracy went on for four years. . . . [T]he evil of a conspiracy is that it does go on. And that's why a person who joins late must know, when they join late, they are liable for what went on before, if they do it knowingly and willfully." App. 137a. However, in Collado, we cautioned:

in deciding whether accomplice attribution is appropriate, it is not enough to merely determine that the defendant's criminal activity was substantial. Rather, a searching and individualized inquiry into the circumstances surrounding each defendant's involvement in the conspiracy is critical to ensure that the defendant's sentence accurately reflects his or her role.

8

975 F.2d at 995. We also stated, absent "unusual circumstances, . . . conduct that occurred before the defendant entered into an agreement cannot be said to be in furtherance of or within the scope of that agreement." Id. at 997.

Counsel for Tony Mannino clearly made this argument to the sentencing court though he did not specifically refer to Amendment 78. See N.T. 12/6/89 at 6-7. The court responded by noting counsel's objection in order to preserve it for appeal, and then proceeding to make an explicit finding that Tony Mannino played a leadership role in this conspiracy. However, the court did not conduct a "searching and individualized inquiry" as to whether Tony could have reasonably foreseen that this jointly-undertaken activity would distribute in excess of 10 kilograms of heroin. Rather, the court relied upon the total amount of heroin attributed to the conspiracy in the PSI to arrive at an offense level of 36. See PSI of Tony Mannino at P 62. As the Magistrate Judge correctly concluded, this approach falls short of that required by Amendment 78. Such an error is all the more significant where, as here, a defendant faces possible attribution of a significant amount of heroin that was concededly distributed before he joined the conspiracy. Id. at P 15; Addendum to PSI at p. 18; N.T. 12/6/89 at 4.

Similarly, the transcript of Sal's sentencing establishes that the sentencing court also failed to conduct a proper inquiry into the drugs that should be attributed to Sal. Sal's attorney specifically called the court's attention to the change occasioned by Amendment 78. See N.T. 12/7/89 at 13-14. The court responded to what it viewed as counsel's "good-faith beliefs about [counsel's] expectation to change the law of conspiracy," N.T. 12/7/89 at 17, by reiterating the evils of conspiracies and relying upon the maxim that "those who join on the last day are liable for the first day and throughout." Id. However, in Collado we stated our disagreement with those courts that viewed accomplice attribution under the guidelines as being coextensive with accomplice liability under the law of conspiracy. We noted that the Circuit Courts of Appeals were not in agreement as to the scope of accomplice attribution under the guidelines,

but stated: "[w]e need not take a position regarding the proper interpretation of conspiracy law, for in our view, the relevant conduct provision [of the guidelines] is not coextensive with conspiracy law." 975 F.2d at 997 (emphasis added).

Here, the sentencing court found that Sal was involved in the communication aspect of the conspiracy, which it characterized as "the heart of the distribution conspiracy." However, there was no specific inquiry to determine whether, given Sal's individual role, he could reasonably foresee that the conspiracy would distribute the quantity of heroin attributed to him at sentencing and whether the quantity allocated to him was part of his undertaking. Instead, the court relied upon the law of conspiracy to conclude that Sal's sentence should reflect the quantity of drugs set forth in the count of conviction as stated in the PSI. Thus, the court arrived at the base offense level of 36 and the corresponding sentencing range of 216 months.

Similarly, paragraph 61 of Sal's PSI states, in relevant part: "Section 1B1.3 (relevant conduct) allows us to consider all the behavior in furtherance of this conspiracy. The government reported that the Gambino conspiracy distributed more than 10 kilograms of heroin throughout the life of the conspiracy. The base offense level is therefore 36." That conclusion is inconsistent with Amendment 78 and the pronouncements of Collado, and the court therefore erred when it relied upon that erroneous methodology to calculate the appropriate sentence for Tony and Sal Mannino.[5] Although the attorneys for both defendants raised this point at sentencing, as noted above, neither pursued that issue on appeal, and the Manninos now contend that the omission denied them the effective assistance of counsel guaranteed by the Constitution. We agree.

This is not a situation in which counsel failed to anticipate a change in the law, see Sistrunk v. Vaughn, 96 F.3d 666, 670–71 (3d Cir. 1996), quoting Government of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir.

_____

5. Both PSIs were apparently prepared before Amendment 78 was adopted by the Sentencing Commission.

10

1989)("there is no general duty on the part of defense counsel to anticipate changes in the law"), because both attorneys were aware of the issue and raised it at sentencing. Thereafter, in support of the petitions subsequently filed under S 2255, the defendants submitted sworn affidavits from both trial counsel in support of their assertion that counsel's failure to raise this claim on direct appeal was not a tactical or strategic decision. The government did not choose to cross-examine trial counsel in opposing the defendants' 2255 petitions. Rather, the prosecutor stipulated to their affidavits. Although neither trial attorney had a specific recollection of their reasons for not pursuing this argument on appeal, both swore that his decision was not a strategic or tactical one. Attorney Carnesi, counsel for Tony, could not remember discussing any sentencing issues with his colleague (Attorney Russo) when they were preparing Tony's direct appeal. In the brief he filed in this appeal, current counsel for the defendants states, "the court's docket shows that defense counsel did not even order and did not have a sentencing transcript during the time they were working on the appeal." Appellants' Br. at 31; App. 6a, 13a. Attorney Fitzpatrick could not "think of any reason why [he] would not have raised on appeal an issue of such potential importance that had been preserved at sentencing, except oversight or misjudgment." App. 179a.

In denying relief and rejecting the Recommendation and Report of the Magistrate Judge, the court stated that both defendants were

> represented by excellent attorneys who zealously represented them at every level of the proceedings and raised every feasible defense. The court cannot conclude that the failure to raise the issue on direct appeal was an oversight. Even if the court did find that it was oversight rather than strategy, that failure does not meet the "objectively unreasonable standard."

Dist. Ct. Memorandum at 17. There is nothing in the record to support this conclusion. Morever, given the nature of the conspiracy charged in the instant indictment and the severity of the Sentencing Guidelines, we are unable to imagine any strategic or tactical justification for failing to

11

pursue an argument of such obvious merit and importance as the proper method for attributing drugs to a defendant being sentenced under U.S.S.G. S 1B1.3. The only plausible explanation is that counsel simply did not have sufficient space in their appellate briefs and dropped this claim even though it had significant merit. However, assuming arguendo that would justify abandoning this argument after it had been preserved at sentencing, current counsel represents (without contradiction) that such was clearly not the case. In the brief filed in this appeal, current counsel represents that the briefs filed in the direct appeals of both Tony and Sal were well under the page limitation and that appellate counsel could certainly have included a claim based upon the misapplication of U.S.S.G. S 1B1.3. See Appellants' Br. at 30-31.

Therefore, we conclude that the only possible explanation for such an omission is the very reason that the trial attorneys gave. They simply overlooked it, or they misjudged. Though the district court rejected this explanation because of the skill and experience of defense counsel, it is the only explanation consistent with this record. Clearly, no defense attorney is infallible no matter how experienced he or she may be; and zealous representation, even by an experienced attorney, does not displace the possibility of human error. Therefore, we conclude that the court's finding that the omission was deliberate is clearly erroneous. See United States v. Monostra, 125 F.3d 183, 188 (3d Cir. 1997). 6

As the government correctly points out, the court was not compelled to credit the trial counsel's affidavits if there exist "sound reasons" for not doing so. See Appellee's Brief at 14 (citing Anderson v. City of Bessemer, 470 U.S. 564, 573-74 (1985)). However, we can find no such "sound reasons" on the record here, and the government has not

_____

6. The court also speculates that "Counsel could reasonably have decided that they could not prevail on the sentencing issue and that raising it in the appeal would be futile." Dist. Ct. Memorandum at 18. However, there is nothing in the record to support that speculation, and it is difficult to imagine how attorneys with the expertise and experience of trial counsel here could reach such a conclusion given the text of Amendment 78.

been able to suggest any. The court rejected counsel's affidavits in a footnote stating: "[g]iven counsel's familiarity with the case and the issues, the court does notfind these affidavits credible." Dist. Ct. Memorandum at 16 n.14. The court could have held an evidentiary hearing if it doubted the veracity of counsel's affidavits, see United States v. Day, 969 F.2d 39, 41 (3d Cir. 1992), and/or the government could have called the affiants as witnesses in an effort to impeach their sworn statements. See Rule 8 of the Rules Governing Section 2255 Proceedings.7 That was not done, and we are left only with their unchallenged (and facially logical and consistent) explanation of their omission.

We " `must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.' " Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996)(quoting Strickland, 466 U.S. at 690). Given the affidavits submitted by counsel and stipulated to by the government, the fact that the sentencing issues were raised at sentencing and preserved for appeal and that no other sentencing issue was raised on appeal, there is simply no rational basis to believe that counsel's failure to argue the relevant conduct issue on appeal was a strategic choice. See Barnett v. Hargett, 174 F.3d 1128, 1135 (10th Cir. 1999)(deficiency of appellate counsel can be established by showing that counsel failed to raise an issue that was obvious from the trial record); United States v. Cook, 45 F.3d 388, 395 (10th Cir. 1995)(same in S 2255 context); United States v. Headley, 923 F.2d 1079, 1084 (3d Cir. 1991)(failure to raise obvious and potentially successful sentencing guidelines issue at sentencing cannot be said to have been a strategic choice but, rather, amounts to ineffective assistance).

_____

7. We do not suggest that the district court had to accept the averments contained in the affidavits in the absence of the affiants appearing in court. However where, as here, there is nothing on the record to contradict the averments and where the averments contain no internal inconsistency, a court must have some basis for rejecting the sworn testimony of otherwise credible affiants, especially where those affiants are officers of the court.

However, as noted above, the defendants must do more than show that counsel's failure to pursue the issue of their sentencing on direct appeal was not reasonable. Strickland requires that the defendants demonstrate that they were prejudiced by counsel's failure to pursue this meritorious claim.

III.

The district court held that defendants must show more than that their sentences would have been vacated and the case remanded for resentencing in order for them to establish prejudice under Strickland and prevail on their S 2255 petitions. The court held that the defendants also had to establish a reasonable probability that the outcome of that resentencing would have been "favorably different." Dist. Ct. Memorandum at 18. The court then noted that the defendants were "important actors that agreed to participate and did knowingly participate, in a conspiracy that had as its object the importation from Italy and distribution within the United States, of a seemingly limitless supply of heroin." Id. at 19. The court stated: "[i]f the court were to resentence Petitioners, . . . the court would be guided by the same sentencing criteria in resentencing Petitioners to the very sentences imposed on December 6 and 7, 1989. Therefore, under the Strickland test, the prejudice prong cannot be met and Petitioners' ineffective assistance of counsel claim fails." Id. at 20-21. However, the court applied the wrong test. The test for prejudice under Strickland is not whether petitioners would likely prevail upon remand, but whether we would have likely reversed and ordered a remand had the issue been raised on direct appeal. See, e.g., Barnett, 174 F.3d at 1135 (prejudice resulting from appellate counsel's omission of issue on appeal established where inclusion of issue "probably would have resulted in reversal"); McKee, 167 F.3d at 108 (had counsel made proper challenge on direct appeal, petitioner would have been granted a new trial); Government of Virgin Islands v. Forte, 865 F.2d 59, 64-65 (3d Cir. 1989).

In Forte, we considered a claim of ineffective assistance of counsel based upon trial counsel's failure to raise an

14

objection to purportedly racially motivated peremptory jury strikes. Batson v. Kentucky, 476 U.S. 79 (1986), was pending before the Supreme Court, but defense counsel failed to object despite a specific request from defendant and a consulting attorney that he do so. Forte was convicted and thereafter challenged his trial attorney's failure to raise the Batson claim. After noting that Forte would have been successful in having the matter remanded on direct appeal had the Batson issue been preserved at trial, we applied Strickland and concluded that the trial attorney's performance had been unreasonable and had prejudiced Forte by denying him a just result on appeal. Forte, 865 F.2d at 64–65. We did not require Forte to show that he would have prevailed on the Batson issue following remand. Thus, the prejudice prong of a Strickland analysis is satisfied if there is a reasonable probability that the result of the appeal would have been different had counsel's stewardship not fallen below the required standard.

For the reasons set forth in our discussion regarding the sentencing proceedings of the Mannino brothers, we agree with the Magistrate Judge's conclusion that there is a reasonable probability that, had counsel raised an Amendment 78 claim on direct appeal, we would have vacated the defendants' sentences and remanded for the kind of analysis required under Collado. The defendants can therefore establish ineffective assistance of counsel under Strickland, and they have therefore demonstrated the cause and prejudice that will excuse the procedural default that resulted from counsel's failure to challenge their sentencings on direct appeal. See, e.g. , Murray v. Carrier, 477 U.S. 478, 488 (1986)(counsel's errors that rise to constitutional ineffectiveness under the Strickland standard constitute cause for procedural default); Essig , 10 F.3d at 979.8

Our analytical waters are muddied however, because the defendants must demonstrate prejudice under Strickland to

_____

8. Given this determination, it is unnecessary for us to consider the additional claims raised by defendants as cause for their failure to pursue the Sentencing Guidelines issue on direct appeal.

establish cause for procedural default, and they must also establish prejudice as part of the "cause and prejudice" analysis under Frady. The latter requires defendants to show that the district court's attribution of drugs was to their "actual and substantial disadvantage." Frady, 456 U.S. at 170. As noted above, the district court concluded that the defendants were not prejudiced because it would impose the very same sentences if defendants were resentenced. The court reasoned, "[p]etitioners agree[d] to participate in a far-reaching conspiracy that they knew had as its object the importation and distribution of heroin in quantities that easily exceeded 10 kilograms." Memorandum Opinion at 26. We have already determined that defendants' sentencing proceedings fell short of the requirements of Collado; thus, we need not revisit that issue here. Rather, we will proceed to determine whether defendants can establish that the court's conflation of the law of conspiracy and principles of accomplice attribution under the guidelines worked to their "actual and substantial disadvantage." Despite the court's pronouncement that the defendants would receive the same sentence on remand based upon their involvement, we conclude that the defendants have established the necessary prejudice under Frady.

Absent waiver (which is not implicated here), a defendant has an unqualified right to be present at sentencing, see Rules 32(c), and 43(a) Fed. R. Crim. P., and this extends to resentencing upon remand. United States v. Moree , 928 F.2d 654 (5th Cir. 1991). See also United States v. Taylor, 11 F.3d 149 (11th Cir. 1994). We recently described Rule 43's requirement that a defendant be present at the imposition of sentence as a "fundamental procedural guarantee that places the defendant before the judge at a culminating moment of the criminal judicial process." United States v. Faulks, 201 F.3d 208, 211 (3d Cir. 2000). Additionally, it is now well established that a due process violation may result from the method by which the sentence was determined, and not just from the ultimate sentence imposed. See United States ex rel. Jackson v. Myers, 374 F.2d 707, 711 n.11 (3d Cir. 1967).

Obviously, a criminal defendant must be afforded due process at sentencing. See United States v. Palma, 760 F.2d

16

475, 477 (3d Cir. 1985)(citing Townsend v. Burke , 334 U.S. 736 (1948)). Moreover, it is beyond dispute that a sentencing calculation may violate the due process clause of the Fifth Amendment if there is a possibility that the sentence imposed may have been based on legal and/or factual error. See, e.g., United States v. Levy, 865 F.2d 551, 560 (3d Cir. 1989)(en banc)(resentencing required where there is "unacceptable risk" that two of defendant's sentences are the result of misconception concerning their legal effect); United States v. Katzin, 824 F.2d 234, 240 (3d Cir. 1987)(citing United States v. Tucker, 404 U.S. 443 (1972)("sentencing on the basis of materially untrue assumptions violates due process"); Moore v. United States, 571 F.2d 179, 183-84 and n.7 (3d Cir. 1978)(due process may require resentencing when information on which sentencing court relied in PSI is mistaken or unreliable). Here, the district court's sentence was based upon the Probation Department's blanket conclusion that "Section 1B1.3 (relevant conduct) allows [it] to consider all the behavior in furtherance of this conspiracy." However, Collado requires a finding that the co-conspirators' conduct was in furtherance of the jointly-undertaken activity, within the scope of each defendant's agreements, and reasonably foreseeable in connection with the criminal activity each of the Manninos agreed to undertake. Collado, 975 F.2d at 991-92. Denying the defendants' request for resentencing without such an inquiry based only upon the district court's declaration that it would impose the very same sentence upon remand would be tantamount to allowing the defendants to be sentenced in absentia.

Despite the district court's belief that defendants would each receive the same sentence as a result of their individual conduct, defense counsel must have an opportunity to force the government to meet its burden of proof as to any drugs attributed to either defendant based upon someone else's conduct. Collado, supra. See also United States v. Paulino, 996 F.2d 1541, 1545 (3d Cir. 1993). Although the government asserts that the record clearly demonstrates that each defendant was responsible for at least 10 kilograms of heroin, and probably far more, see Appellee's Br. at 22-4, counsel for the defendants purports to "give[ ] the benefit of every reasonable doubt to

17

the court's analysis. . ." while rebutting a substantial quantity of the drugs attributed to the defendants in the PSI. See Appellants' Br. at 19-24.

For example, the district court attributed to each defendant six kilograms of heroin that were removed from couriers at Italian and United States airports in March of 1986. However, this heroin was personally placed on the couriers by a person named "Allegra." The district court allowed an amendment to the PSI, to reflect that there was no evidence that the Manninos were participating in the heroin importation operation in March 1986. PSIs atPP 14 and 15. Similarly, although not specifically included in the court's calculation of 10-plus kilograms, there was no finding as to how much of the eighty kilograms of heroin attributed to "Ricupa" was imported and distributed after defendants joined the conspiracy in 1986. Moreover, the indictment referred to heroin that was exchanged for the hundreds of kilograms of cocaine from Columbia. The PSIs attribute this to Tony and Sal merely by concluding that this exchange "elucidated the scope and breadth of the conspiracy." Dist. Ct. Memorandum and Opinion at 26-27. The testimony of witness Cuffaro regarding this 570 kilogram cocaine transaction was challenged at Tony Mannino's sentencing and the district court directed the probation officer to correct paragraph 25 of the PSI to read that "a government witness testified that he was told that Mr. Mannino and Simone Zito had assisted [one the bosses involved in the transaction]." Id. at 27 n.22 (emphasis added).

"Information used as a basis for sentencing under the Guidelines must have `sufficient indicia of reliability to support its probable accuracy.' " United States v. Miele, 989 F.2d 659, 663 (3d Cir. 1993)(quoting U.S.S.G. S 6A1.3(a)). The district court must, therefore, afford Tony and Sal Mannino a meaningful opportunity to challenge whether the quantity of heroin ultimately attributed to each was reasonably foreseeable by each so that neither defendant will be sentenced for drugs that should not be attributed to him under the guidelines. The underlying S 2255 proceeding did not afford defendants this opportunity. Accordingly, the district court's assertion that it will impose

18

the same sentence upon remand does not negate a finding of prejudice under Frady, and it, therefore, does not negate the necessity of a remand.

We do not suggest, however, that the district court is necessarily precluded from reimposing the same sentence on each of these defendants following remand if the court conducts the required searching and individualized inquiry as to both defendants and concludes that the sentences that were originally imposed were appropriate under Amendment 78 as amplified by Collado. However, absent such an inquiry, the sentences previously imposed can not stand.

IV. Conclusion

For the foregoing reasons, we will vacate the court's opinion denying defendants' S 2255 petitions and remand this matter for further proceedings consistent with this opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

19