**UNITED STATES of America**

v.

**Robert John JANSEN, Defendant**

**No. 4:CR–98–240.**

United States District Court,
M.D. Pennsylvania.

Aug. 22, 2002.

Eric Pfisterer, U.S. Attorney's Office, Harrisburg, PA, for U.S.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

Before the court is Robert John Jansen's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. After a jury convicted him of possession with intent to distribute a controlled substance, Jansen was sentenced to a term of imprisonment of 121 months. In his § 2255 motion, he brings the following six claims, all of which are framed in terms of ineffective assistance of counsel: (1) his sentence violated the rule set forth in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); (2) his base offense level was too high, as a certain amount of the drugs associated with the crime was for his own personal use; (3) evidence of his involvement in a prior drug transaction was erroneously admit-

ted; (4) certain statements he made to the police should have been excluded as falling within the scope of inadmissible plea discussions; (5) the jury should have been instructed to consider a lesser included offense of simple drug possession; and (6) counsel failed to call a witness who would have stated that Jansen, at the time of his arrest, invoked his Fifth Amendment right to counsel, which rendered all further police questioning improper. We will hold a hearing relating to the issue of Jansen's invocation of his right to counsel. Each of Jansen's other claims will be denied.

### DISCUSSION:

#### I. STANDARD OF REVIEW

Section 2255 allows prisoners in federal custody to attack the validity of their sentences. In general, § 2255 is a vehicle to cure only jurisdictional errors, constitutional violations, proceedings that resulted in a "complete miscarriage of justice," or events that were "inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck*, 441 U.S. 780, 783–84, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979) (citations omitted); *see also United States v. Addonizio*, 442 U.S. 178, 185–86, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979) (citations omitted); *United States v. Essig*, 10 F.3d 968, 977 n. 25 (3d Cir.1993) (citations omitted).

"Generally, if a prisoner's § 2255 [motion] raises an issue of material fact, the district court must hold a hearing to determine the truth of the allegations." *Essig*, 10 F.3d at 976 (citations omitted). A defendant is not entitled to a hearing, however, if his allegations are contradicted conclusively by the record or if they are patently frivolous. *Solis v. United States*, 252 F.3d 289, 295 (3d Cir.2001) (citations omitted). In the same vein, "[a] district court need not hold a hearing if the motion and files and records of the case show

conclusively that the movant is not entitled to relief." *United States v. Melendez,* No. CRIM. 00–00069–01, CIV. 01–3305, 2001 WL 1251462, at *2 (E.D.Pa. September 21, 2001) (slip copy) (citing *Government of the Virgin Islands v. Forte,* 865 F.2d 59, 62 (3d Cir.1989)).

## II. FACTS AND PROCEDURAL HISTORY

On June 30, 1998, Jansen and coperpetrator Andrew DeHart, traveling in a car heading westbound on Interstate Route 80, were stopped by the police. Upon stopping the car, the police discovered in the trunk a VCR containing cocaine powder. In addition, Jansen was carrying on his person 34.2 grams of cocaine powder and 16.3 grams of cocaine base.

The police read Jansen his *Miranda* warnings. After hearing the warnings, Jansen told the police that he and DeHart were returning from New York City and bringing the cocaine in the VCR to Richard Willow, who was located in Middleburg, Pennsylvania. He stated that twice a month for the previous five months, he had traveled to New York in order to pick up a large amount of cocaine powder. During these trips, Jansen said, he would purchase a certain amount of cocaine for himself, pick up a VCR containing cocaine powder for delivery to Richard Willow, and receive some cocaine as payment for his services. He stated that the drugs on his person, consisting of both cocaine powder and cocaine base, were for his personal use.

On October 13, 1998, a grand jury sitting in the Middle District of Pennsylvania returned an indictment against Jansen. According to the indictment, Jansen "did knowingly and intentionally distribute, and possess with intent to distribute, cocaine and cocaine base, also known as crack cocaine," in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (Indictment, Rec.Doc. No. 1.)

A two-day jury trial was held January 11 and 12, 1999. While testifying, Jansen recanted many of the statements that he made to the police. His contention at trial was that DeHart alone planned on delivering the VCR to Willow. Jansen claimed that, at the time of the stop, he knew of DeHart's intention to deliver the drugs but was not personally involved in the transaction. Jansen also claimed, consistent with his statements to the police, that the drugs on his person were for his own use.

During closing arguments, the government asserted that the jury should believe the statements that Jansen made to the police. Specifically, it contended that the cocaine powder found on Jansen's person was payment for the delivery of the drugs in the VCR, and that the cocaine base found on Jansen's person was purchased for personal use. In any event, the government argued, Jansen had the intent to distribute the cocaine in the VCR. According to the prosecution, this version of the story "fit[ ] the facts" and "[made] sense as to what he did and why he went [to New York]." (Trial Transcript, Rec. Doc. No. 58, at 54.) The defense's theory was that while Jansen possessed the drugs on his person, he had no intent to distribute the drugs in the VCR, and the drugs that he possessed were for his personal use only.

The jury was charged with the task of determining whether Jansen possessed with intent to distribute a controlled substance. The court made it clear that the jury was required to decide whether Jansen possessed with intent to distribute *a controlled substance only.* The court explained that the government was not required to prove the exact identity of the controlled substance, and the jury was told that the statute would be satisfied whether the material in question was cocaine pow-

der, cocaine base or both, so long as the government proved beyond a reasonable doubt that the material was a controlled substance. The jury was not instructed regarding a lesser included offense of simple possession of a controlled substance.

Jansen was convicted.

The probation officer prepared a presentence report. Using the 1998 edition of the United States Sentencing Commission Guidelines Manual, he calculated Johnson's sentence as follows:

• The Guideline for a violation of 21 U.S.C. § 841 is U.S.S.G.§ 2D1.1. Because Jansen, at the time of his arrest, possessed both cocaine powder and cocaine base, the drug quantity was determined by assessing each material's marijuana equivalent in accordance with the drug equivalency table that appears in Application Note 10 to § 2D1.1. Upon his arrest, Jansen possessed on his person 34.2 grams of cocaine powder, which converted into 6.84 kilograms of marijuana, and 16.3 grams of cocaine base, which converted into 326 kilograms of marijuana. Inside the trunk of the car, the police recovered 448 grams of cocaine powder, which converted into 89.6 kilograms of marijuana.

In addition to his responsibility for the drugs found at the time of his arrest, Jansen was charged with accountability for drugs that he had previously trafficked. Upon his arrest, he told police that twice per month for the previous five months he had made similar trips to New York. He stated that each time, he had received a one-ounce payment of cocaine for delivering to Willow a VCR that contained an unknown quantity of cocaine powder. Based on this admission, it was reasonable—and even conservative—to infer that Jansen made an additional ten trips and each time transported five ounces of cocaine powder. Jansen, then, was accountable for an additional 50 ounces (1,417.5

grams) of cocaine powder, which converted into 283.5 kilograms of marijuana.

In all, Jansen was responsible for the equivalent of 705.94 kilograms of marijuana. Section 2D1.1(c)(5) dictated that accordingly, Jansen's base offense level was 30.

• As there were no upward or downward adjustments, Jansen's total offense level also was 30.

• Jansen was charged with 5 criminal history points, giving him a criminal history category of III.

• Based on a total offense level of 30 and a criminal history category of III, Jansen's Guideline imprisonment range was 121 to 151 months.

At sentencing, counsel for Jansen made several objections that are immaterial to the instant motion. The court sentenced Jansen to a term of imprisonment of 121 months.

Jansen filed an appeal with the Third Circuit. The appeal focused on the suppression of evidence obtained in accordance with his arrest. The Third Circuit affirmed this court's admission of the evidence, and Jansen's conviction and sentence remained. The instant motion followed.

### III. ANALYSIS

Jansen's § 2255 motion focuses exclusively on claims of ineffective assistance of counsel. Before beginning our analysis, we note that procedural default is not an issue, as claims for ineffective assistance of counsel may be raised for the first time in a motion under § 2255. *United States v. Garth,* 188 F.3d 99, 107 n. 11 (3d Cir.1999) (citing *United States v. DeRewal,* 10 F.3d 100, 103 (3d Cir.1993)).

To succeed on a claim of ineffective assistance of counsel, a defendant must show

that (1) the performance of counsel fell below an objective standard of reasonableness; and (2) the errors of counsel prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687–688, 691–692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Both *Strickland* prongs must be satisfied." *George v. Sively,* 254 F.3d 438, 443 (3d Cir.2001) (citing *United States v. Nino,* 878 F.2d 101, 104 (3d Cir.1989)). The defendant bears the burden of establishing ineffective assistance of counsel. *Whitney v. Horn,* 280 F.3d 240, 258 (3d Cir.2002). The *Strickland* test is applicable to claims for ineffective assistance of appellate counsel. *United States v. Mannino,* 212 F.3d 835, 840 n. 4 (3d Cir.2000) (citations omitted).

The first prong requires the defendant to "establish ... that counsel's performance was deficient." *Jermyn v. Horn,* 266 F.3d 257, 282 (3d Cir.2001). "This requires showing that counsel was not functioning as the 'counsel' guaranteed defendant by the Sixth Amendment." *Id.* (quoting *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052) (internal quotation marks omitted). "In assessing counsel's performance, 'every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Id.* (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052). "There is a 'strong presumption' that counsel's performance was reasonable." *Id.* "That is to say, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quoting *Berryman v. Morton,* 100 F.3d 1089, 1094 (3d Cir.1996) (in turn quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052)).

The second prong requires the defendant to "demonstrate that he was prejudiced by counsel's errors." *Id.* (citing *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052). "The [movant] must show that 'there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). "A 'reasonable probability' is 'a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). "This standard 'is not a stringent one'; it is less demanding than the preponderance standard." *Id.* (quoting *Baker v. Barbo,* 177 F.3d 149, 154 (3d Cir.1999)). "[A] court must consider the strength of the evidence in deciding whether the *Strickland* prejudice prong has been satisfied." *Buehl v. Vaughn,* 166 F.3d 163, 172 (3d Cir.1999). "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" *Id.* (quoting *Strickland,* 466 U.S. at 696, 104 S.Ct. 2052).

### Apprendi

Jansen's first claim implicates the case of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In *Apprendi,* the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348. According to Jansen, the quantity of drugs for which he was held accountable should have been submitted to the jury and proven beyond a reasonable doubt. It is well-settled, though, that *Apprendi* is inapplicable when the defendant's actual sentence is less than the statutory maximum sentence for the offense of conviction. *United States v. Titchell,* 261 F.3d 348, 352 (3d Cir.2001) (citing *United States v. Williams,* 235 F.3d 858, 863 (3d Cir.2000)).

Jansen was convicted under 21 U.S.C. § 841(a)(1) of possessing with intent to distribute cocaine or cocaine base (each a Schedule II controlled substance), but the jury was not asked to make a finding as to drug quantity. A defendant in this position is subjected to a statutory maximum sentence of 20 years. 21 U.S.C. § 841(b)(1)(C); *United States v. Pressler*, 256 F.3d 144, 157 n. 6 (3d Cir.2001); *United States v. Thomas*, 274 F.3d 655, 660 n. 2 (2d Cir.2001). Johnson received a sentence of 121 months, or just above 10 years, which is well below the twenty-year statutory maximum for his offense. Accordingly, *Apprendi* is not implicated, and any related ineffectiveness claim is meritless.

### Base offense level

■ Jansen asserts that trial counsel should have objected to the probation officer's calculation of his base offense level. The base offense level of 30 was determined by holding Jansen responsible for the cocaine found in the VCR, the drugs found on Jansen's person (which included the 34.2 grams of powder cocaine and the 16.3 grams of cocaine base), and the amount of cocaine that it was reasonable to assume that Jansen had transported in the past. Jansen's position at trial was that the drugs found on his person were for his personal use. He reasserts this position now, claiming that the court should not have counted the 16.3 grams of cocaine base that was found on his person. He contends that if the cocaine base had been excluded from the determination of his relevant conduct, then his base offense level would have been 26 rather than 30, and his Guideline imprisonment range would have been 78–97 months rather than 121–151 months.

Five circuits have considered arguments parallel to Jansen's, and the decisions have been split. The Second, Eighth, Seventh, and Ninth Circuits have held that in calculating the base offense level for a conviction of possession with the intent to distribute, a district court must exclude those drug quantities that the defendants reserved for personal use. *United States v. Williams*, 247 F.3d 353, 355 (2d Cir.2001); *United States v. Fraser*, 243 F.3d 473, 475 (8th Cir.2001); *United States v. Wyss*, 147 F.3d 631, 632 (7th Cir.1998); *United States v. Kipp*, 10 F.3d 1463, 1465 (9th Cir.1993). The Eleventh Circuit has taken the opposite view, holding that personal-use quantities may be included in the calculation of the base offense level. *United States v. Antonietti*, 86 F.3d 206, 210 (11th Cir. 1996).

The principal consideration when dealing with this issue is the Guidelines' concept of relevant conduct. Generally, a drug defendant's base offense level is determined by ascertaining his relevant conduct. U.S.S.G. § 1B1.3(a)(1)(A) states that relevant conduct includes "all acts ... that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." *Id.* In drug cases, relevant conduct typically translates into the quantity of drugs for which the defendant may be held accountable. The circuits that have declined to include personal-use quantities when determining the base offense level have done so based primarily on a conclusion that "the act of setting aside narcotics for personal consumption is ... not a part of a scheme or plan to distribute these drugs." *Williams*, 247 F.3d at 358.

We decline to adopt this premise, as we disagree with a rule that would automatically exclude personal-use quantities from distribution quantities. We find persuasive the reasoning of the dissent in *Fraser*. There, the dissent departed from the Eighth's Circuit's view that personal-use quantities are necessarily excluded from

distribution crimes. In *Fraser,* the defendant was convicted of attempted possession with intent to distribute one pound of methamphetamine. The conviction was based on a single attempted transaction of a single batch of drugs. The defendant argued at sentencing that it was her intention that the majority of the drugs would be for her personal use; the Eighth Circuit ruled that any quantity intended for personal use should have been excluded from the determination of her base offense level. The dissent disagreed. It noted that the defendant's attempted purchase of the drugs for personal use was "inextricably intertwined" with her attempted purchase with intent to distribute. *Fraser,* 243 F.3d at 477. Specifically, there was only one purchase of a single batch of drugs, and "[h]er act of attempting to purchase drugs for personal use (assuming that is partially what she was doing) occurred at the very same time as her act of attempting to purchase methamphetamine with intent to distribute." *Id.* Accordingly, because the attempted purchase for personal use and the attempted purchase for distribution was "one indivisible act," the entire quantity should have been countable for sentencing purposes. *Id.* The dissent recognized the possibility that at times a personal-use quantity could be so unrelated to the distribution crime that it should not be counted at sentencing. But, according to the dissent, the specific facts of *Fraser* did not fit this scenario, as the nexus between the distribution quantity and the alleged personal-use quantity was close enough to warrant that the defendant be responsible for all of the drugs.

We believe that the reasoning of the *Fraser* dissent is applicable to Jansen's case. Jansen's possession of the crack cocaine was part and parcel of his attempt to distribute the powder cocaine in the VCR. The crack was obtained as a result of Jansen's trip to New York. Jansen received the crack from the person who gave him the VCR. The connection between the drugs Jansen intended to distribute (the powder cocaine in the VCR) and the drugs Jansen allegedly intended for his own use (the crack on his person) was strong enough that his use of both drugs "occurred during the commission of the offense of conviction." Therefore, all amounts of drugs possessed by Jansen were properly considered to be relevant conduct.

Moreover, the fact that Jansen possessed such a large quantity of cocaine base weighs in favor of treating his possession of cocaine base as conduct that is consistent with the distribution of the drug. Support for this statement may be found in the Sentencing Guideline provision for simple possession. U.S.S.G. § 2D2.1(b)(1) mandates that "[i]f the defendant is convicted of possession of more than 5 grams of a mixture or substance containing cocaine base, apply § 2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking) as if the defendant had been convicted of possession of that mixture or substance with intent to distribute." *Id.* Through this cross-reference, the Sentencing Commission makes it clear that it treats the possession of more than 5 grams of cocaine base as an offense that is akin to distribution of that amount. Of course, this directive applies only in the event of a *conviction* of possession more than 5 grams of cocaine base, and because the jury was not required to make a specific finding as to drug quantity, the provision is not strictly applicable. It is, however, a strong indication that possession of 16.3 grams of cocaine base is consistent with distributing or intending to distribute the drug rather than merely possessing it.

We recognize that our decision conflicts with those of four courts of appeals. Thus, a valid question may be raised as to whether counsel's failure to object to our sen-

tence calculation constituted deficient performance. It is unnecessary to make this determination, though, because Jansen has failed to demonstrate prejudice. As the above discussion indicates, even had counsel objected to the sentence calculation, the objection would have been overruled. Thus, Jansen has failed to establish that there is a reasonable probability that, but for counsel's failure to object, the result of the proceeding would have been different. Without this showing of prejudice, his ineffective assistance claim must fail.

### Evidence of Jansen's prior drug transaction

■ Jansen contends that appellate counsel (who, incidentally, was also trial counsel) failed to appeal the district court's admission of certain evidence. As stated above, Jansen's theory at trial was that while he did possess the drugs on his person, they were for his personal use only, and he had no intention to distribute either the drugs on his person or the drugs in the VCR. After Jansen testified to this effect, the prosecution sought to offer evidence that within 30 days before he was arrested, he sold drugs to an undercover police officer. Jansen objected, arguing that the evidence was improper character evidence and was unduly prejudicial. The court disagreed, and it allowed the evidence as probative of Jansen's intent to distribute the drugs that were the subject of the instant prosecution. Although trial counsel preserved the objection to the admission of the evidence, the issue of the evidence's admissibility was not part of Jansen's appeal.

Jansen's primary argument is that the sole reason for the admission of the prior drug sale was to show that because he sold the drugs to the undercover officer, he intended to distribute the drugs found in the car. Offering evidence of prior crimes to show propensity is forbidden by Federal Rule of Evidence 404(b), which states:

Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

The government's position is that the evidence falls under Rule 404(b)'s dictate that evidence of prior acts may be used to prove intent. That is, the evidence of Jansen's prior attempt to sell drugs was admissible not to show Jansen's propensity to deal drugs, but to show that he had the intent to distribute the drugs found in the car.

■ The government has the winning argument. "[P]roof of uncharged acts of drug trafficking are relevant and probative of whether a defendant had the intent to distribute drugs in his possession." *United States v. Vaughn*, 267 F.3d 653, 659 (7th Cir.2001); *see also* 12 Fed. Proc., L.Ed. § 33:186 ("In prosecutions for possession of drugs or engaging in illegal drug transactions, evidence of prior drug offenses is often admissible under FRE 404(b) to show the defendant's intent to participate in the transactions charged in the instant case."); *United States v. Brown*, 3 F.3d 673, 681 n. 8 (3d Cir.1993) (suggesting in dicta that prior instances of drug distribution may be admissible under Rule 404(b) to prove a subsequent intent to distribute drugs). Evidence of Jansen's prior attempt to sell drugs was admissible to

prove that he intended to distribute the drugs pertinent to the instant case.

Jansen also contends that admission of the evidence violated Federal Rule of Evidence 403, which states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Id.* According to Jansen, the probative value of the evidence is substantially outweighed by the danger of unfair prejudice and confusion of the issues. He points out that evidence of the sale was the last thing heard by the jury before deliberation, and he argues that because it was "freshest in the jury's minds (sic)," it was likely to lead the jury to confuse the previous sale with the later sale. (Rec. Doc. No. 68 at 3.) There is no indication that Jansen was unfairly prejudiced or that the jury confused the two drug-related events. The jury was given a limiting instruction regarding the purpose for which the evidence was to be considered, (Transcript, Rec. Doc. No. 46, at 73), and "[a] jury is presumed to follow its instructions." *Weeks v. Angelone,* 528 U.S. 225, 234, 120 S.Ct. 727, 145 L.Ed.2d 727 (2000) (citing *Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987)).

Appellate counsel's failure to raise this issue did not deem him ineffective, as Jansen's position with respect to the admission of this evidence is unfounded.

### Suppression of statements made during plea discussions

Jansen next claims that because his statements to his arresting officers were made in the context of plea negotiations, they should have been excluded from evidence at trial. Jansen asserts that trial counsel should have moved on this basis for the statements' suppression. The gov-

ernment offers nothing other than an unsupported denial of Jansen's claim.

Federal Rule of Evidence 410 states:

Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:

.    .    .    .    .

(4) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

*Id.; see also* Fed.R.Crim.P. 11(e)(6)(D) (containing similar language). The language of Rule 410 provides for the exclusion of statements made during plea discussions *"with an attorney for the prosecuting authority."* The statements that Jansen claims should have been suppressed were made to a police officer, not a prosecuting attorney. The weight of authority has held that while Rule 410 does not command that a statement to a police officer will never fall within its purview, statements made to law enforcement officials are excluded from Rule 410's exclusionary principle "unless the law enforcement officer is acting with express authority from a government attorney." 1 Handbook of Fed. Evid. § 410.1 (5th ed.2002).

In order to determine whether the police were acting with authority from a government attorney, we must examine the statements that Jansen highlights. Jansen points to the testimony of one of his arresting officers, Trooper Havens. Jansen's position is that he answered Havens's questions only after Havens said that he would "go to bat" for Jansen. According to Jansen, the following testimony, which describes the beginning of the two men's

conversation, shows that he and Havens were engaging in plea discussions:

> HAVENS: At that point I—I looked for Mr. Jansen, and I pulled him aside and began to talk to him.
>
> PROSECUTOR: And what did you say to Mr. Jansen?
>
> HAVENS: I identified—identified myself to Mr. Jansen. I showed him my identification, said that I was a trooper with the Pennsylvania State Police, and I advised him of his Miranda rights.
>
> PROSECUTOR: And what did Mr. Jansen say?
>
> HAVENS: He stated that he understood his rights, and he waived his right to counsel, and agreed to speak with me.
>
> PROSECUTOR: And did he say anything else to you before you started asking him questions?
>
> HAVENS: He wanted to know what was in it for him if he talked to me.
>
> PROSECUTOR: And what did you tell him?
>
> HAVENS: I told him that I couldn't promise him anything; that he was going to be arrested; and that the only thing that I could offer him was basically judicial consideration. I would make the district magistrate aware of any cooperation that he would have given. I would make the district attorney aware of any cooperation, and ultimately I would let the judge know of any cooperation, but that I could not—I could not withdraw any charges or help him out in any way like that.
>
> PROSECUTOR: And did he go ahead and talk to you at that point?
>
> HAVENS: Yes, he did.

(Transcript, Rec. Doc. No. 45, at 81–82.) Jansen proceeded to confess to possession with intent to distribute cocaine.

There is absolutely no indication that Jansen and Havens were engaging in plea discussions. Havens made it quite clear that he had no authority to control the amount or the character of the charges against Jansen. Havens had neither express nor apparent authority to act on the prosecution's behalf. No plea discussions took place. That said, rule 410 is inapplicable to Jansen's case, and trial counsel's failure to make this argument did not render him ineffective.

### Lesser included offense

■ The jury was charged with determining whether Jansen possessed with intent to distribute or distributed a controlled substance. Jansen contends that trial counsel should have requested a jury instruction on simple possession of a controlled substance, which is a lesser included offense of possession with intent to distribute and distribution of a controlled substance. According to Jansen, there was a possibility that the jury could have found him guilty of simple possession rather than the more serious crime of which he was convicted.

Federal Rule of Criminal Procedure 31(c) states that "[t]he defendant may be found guilty of an offense necessarily included in the offense charged ...." *Id.* The Third Circuit has decreed "[a] district court is required to charge an offense as a lesser included of a greater offense *when requested* if 'the elements of the lesser offense are a subset of the elements of the greater offense.'" *United States v. Taftsiou,* 144 F.3d 287, 291 (3d Cir.1998) (quoting *United States v. Mosley,* 126 F.3d 200, 203 (3d Cir.1997)) (emphasis added).

The elements of the crime of simple possession are a subset of the elements of the crimes of both possession with intent to distribute and distribution. Thus, had trial counsel requested an instruction on simple possession, the court would have been obligated to provide it. We note that although Third Circuit law makes it clear that an instruction on a lesser included offense must be granted in the appropriate

circumstances when it is requested by the defendant, there is no authority stating that the failure of the court to grant such an instruction in the absence of a request by the defendant is a violation of due process. The only proper question, then, is whether trial counsel was ineffective for failing to request the appropriate instruction. Jansen claims that he was, as there was a possibility that the jury could have found him guilty of simple possession as opposed to the greater crime of possession with intent to distribute or distribution.

The government argues that the absence of an instruction on a lesser included offense was actually beneficial to Jansen. It points out that Jansen's defense strategy was to admit possession of the drugs but deny distribution. Had the jury been instructed on simple possession, the government contends, the result would have been at least an automatic conviction on simple possession. The government proffers that without the instruction on the lesser included offense, Jansen had a better chance of an outright acquittal than he would have otherwise, as the jury did not have the option of convicting him of simple possession but rather was required to examine the evidence in the context of a greater crime. Put simply, the jury had only two choices rather than three, and Jansen's chance of being convicted was diminished (and his chance of being acquitted was enhanced) without the instruction on the lesser included offense.

The government may be unaware that the Supreme Court has held that this argument is not a valid one. Faced with this argument in another case, the Court held that a jury in this situation may be more prone to convict of the greater crime—even if the prosecution has failed to prove the defendant's guilt—than it would be to grant an acquittal:

> [I]t is no answer to [a defendant's] demand for a jury instruction on a lesser offense to argue that a defendant may be better off without such an instruction. True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction—in this context or any other—precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction.

*United States v. Keeble,* 412 U.S. 205, 212–13, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973).

Although the government's argument fails, Jansen has not successfully proven his claim. While we make no judgment on the reasonableness of counsel's performance, Jansen's claim fails because he has not demonstrated prejudice. He cannot show a reasonable probability that, assuming counsel erred, the result of the proceeding would have been different. The evidence in support of both Jansen's intent to distribute and his distribution was overwhelming. Indeed, he confessed to the police that he was on his way to deliver the drugs. There is no indication that had the jury been instructed on the lesser included offense, it would have convicted Jansen only on simple possession. The evidence of the more serious crime was just too great. Other courts in similar situations have ruled similarly. *See Harris v. United States,* 938 F.2d 882, 883 (8th Cir.1991); *Leach v. Kolb,* 911 F.2d 1249, 1261 (7th Cir.1990); *Singleton v. Lockhart,* 871 F.2d 1395, 1400–1401 (8th Cir.1989). Because Jansen has failed to show prejudice, his claim of ineffective assistance lacks merit.

 

### Right to counsel

Finally, Jansen contends that trial counsel was ineffective for failing to elicit at trial the fact that Jansen, upon his arrest, immediately invoked his right to counsel, which rendered all further questioning improper. The government responds with a mere declaration that Jansen lacks credibility. The record lacks any reference to Jansen's invocation of his right to post-arrest counsel. Indeed, the transcript of the suppression hearing sets forth the testimony of Trooper Havens that he gave Jansen his *Miranda* warnings, but Jansen did not testify at that hearing.

■ If Jansen is being truthful, however, and he did invoke his right to counsel, all further questioning may have been illegal, which is a fact that certainly would have borne on the admissibility of the statements he made to the police. *See Smith v. Illinois,* 469 U.S. 91, 94–95, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984) (citations omitted). Jansen suggests in his brief that trial counsel knew of the invocation of the right to counsel but failed to bring it to the attention of the court at the suppression hearing or the jury at trial. If this is the case, counsel's performance may be subject to question. As Jansen has raised a question of fact, he is entitled to an evidentiary hearing on this issue.

### CONCLUSION:

The court will hold a hearing on the sole issue of whether trial counsel was ineffective for failing to elicit testimony that Jansen, at the time of his arrest, invoked his right to counsel. Every other claim advanced in Jansen's § 2255 motion is denied. An appropriate order follows.

### ORDER

For the reasons set forth in the accompanying memorandum,

**IT IS ORDERED THAT:**

1. An evidentiary hearing will be scheduled by separate order solely on the issue of whether trial counsel was ineffective for failing to elicit testimony that Jansen, at the time of his arrest, invoked his right to counsel. All other claims are denied.

2. In accordance with Rule 8(c) of the Rules Governing Section 2255 Proceedings for the United States District Courts, the court will by separate order appoint counsel for Jansen for the sole purpose of representing him in connection with the hearing scheduled in paragraph 1 of this order.