UNITED STATES of America,

v.

James T. WILLIAMS.

No. CR. 95–00407–02.
No. CIV. 00–1320.

United States District Court,
E.D. Pennsylvania.

Sept. 13, 2001.

Mary E. Crawley, AUSA, Philadelphia, PA, for government.

Robert J. Levant, Philadelphia, PA, for defendant.

### OPINION AND ORDER

VAN ANTWERPEN, District Judge.

## I. Introduction

The Defendant in this matter is seeking habeas corpus relief pursuant to 28 U.S.C.

§ 2255. On October 30, 1996, defendant Williams was found guilty by a jury of conspiracy to commit armed bank robberies from in or about January 1995 to in or about July 1995 in violation of 18 U.S.C. § 371; armed bank robberies on or about June 14, 1995, July 13, 1995 and July 19, 1995 in violation of 18 U.S.C. § 2113(d); and using and carrying a firearm during and in relation to crimes of violence on or about June 14, 1995 and July 19, 1995, in violation of 18 U.S.C. § 924(c)(1). The defendant was sentenced on January 29, 1997 to a total term of 687 months. An appeal was taken and the sentence and conviction was affirmed by the Third Circuit Court of Appeals on April 1, 1998. *United States v. Williams,* 151 F.3d 1027 (Table), No. 97–1099 (3d Cir. April 1, 1998). Therefore the time to seek habeas corpus relief had a deadline of June 30, 1999. *Kapral v. United States,* 166 F.3d 565, 577 (3d Cir.1999).

This habeas corpus matter began with a letter we received from the defendant dated March 17, 1999 and by Order of March 31, 1999, we deemed the letter to be an application for habeas corpus relief and appointed Mark S. Refowich, Esquire, as CJA counsel to represent the defendant. On June 21, 1999, we granted the motion of Mr. Refowich to withdraw and appointed Robert J. Levant, Esquire, as CJA counsel to represent the Defendant in his habeas corpus proceeding. On July 9, 1999, we granted Mr. Levant's motion for a continuance and issued an order giving him until December 6, 1999 to supersede defendant's initial habeas corpus motion with a new habeas corpus motion. We expressly noted on said order that "no further extensions will be permitted." This deadline was further extended to March 10, 2000 by Order of Court dated November 20, 1999. On March 1, 2000,

the defense again sought an extension of time to file a habeas corpus motion, and we denied this motion with an order dated March 3, 2000. On the deadline, March 10, 2000, the defense filed a new habeas corpus motion. That same day, the Defendant filed a last minute motion to remove Mr. Levant as CJA counsel and proceed *pro se.* On April 5, 2000 we partially granted Mr. Levant's request to withdraw as counsel and the Defendant's request to proceed *pro se.* Finding Defendant to pose a high security risk, we ordered that he not be given free movement in the courtroom or be allowed to have a pen or pencil in open court. Furthermore, we ordered that he not be given records which could disclose the whereabouts of key witnesses. We also ordered that the Defendant would be permitted to supplement the motion filed March 10, 2000 by filing a list of issues with Mr. Levant who would then present the issues in appropriate form to this Court. The Defendant was allowed an extension to prepare for his April 2000 murder trial in Lehigh County, Pennsylvania and we gave him sixty days after the conclusion of the trial but in no event later than August 1, 2000 to file these supplemental issues. We saw to it that the Defendant was sent a copy of our order fixing this deadline. The Defendant filed nothing with the Court by this deadline and for an entire year thereafter filed nothing in his habeas corpus matter.

We received a letter from the defendant dated August 7, 2001 and by Order of August 9, 2001 we deemed the letter from Mr. Williams to be a Motion to Reopen the August 1, 2000 deadline. We noted that defendant had been convicted of murder [1] and that the deadline for raising supplemental issues had long since passed and deemed the right to raise supplemental

---

**1.** It appears that the Defendant has been sentenced to death.

issues *pro se* to have been waived. It is not possible to raise new issues at this point. *United States v. Duffus,* 174 F.3d 333, 337 (3d Cir.1999). On August 30, 2001 we received another letter from defendant, postmarked August 27, 2001. Defendant dated this letter December 16, 1999, but attached prison forms that were filled out on August 13, 2001 and August 21, 2001. Since this letter was obviously a ruse which was written and sent over a year after the August 1, 2000 deadline, we will not consider its contents and stand by our August 1, 2000 deadline.

As we noted in the footnote to our Order of January 24, 1997, which denied the defendant's request for a continuance of his sentencing date, the defendant has a "long history of dilatory and harassing conduct aimed at delaying court proceedings." This history is detailed at length in prior memorandums dated April 8, 1996 and September 12, 1996. The Defendant is a member of a terrorist organization called the "Five Percent Muslims," who believe they have the right to murder anyone they choose. *See* Order of March 22, 1996

The record at sentencing was supplemented by a Bench Memorandum in which we noted that the Defendant had obstructed justice for three reasons. The first reason was he had claimed that he was feeling paranoid and testified untruthfully about conversations with his CJA lawyer claiming that the lawyer called him nasty racial names. The second reason we found the Defendant obstructed justice was that he told a witness, Ralph Logan, to falsely claim that he had given untruthful testimony in court. The Defendant told Logan he could kill him if he wanted to and he and his cellmate jumped on Logan and beat him physically. The third reason we found the Defendant had obstructed justice was because he had contacted witnesses to get them to refuse to testify and destroy evidence concerning the case against him. *See, also United States v. Williams,* 1997 WL 66174 (E.D.Pa., February 7, 1997). The Third Circuit upheld the enhancement for obstruction of justice. *United States v. Williams,* 151 F.3d 1027, No. 97–1099 at *13–14.

The Defendant has changed attorneys many times. Defendant's initial CJA attorney, Eric L. Leinbach, asked to be relieved from further representation on November 8, 1995 because he found the Defendant uncooperative and could not work with him. Even though this was a last minute request on the eve of Defendant's jury trial, we granted this request and appointed new CJA counsel, Thomas A. Bergstrom, Esquire. We set a new trial date of January 22, 1996. There followed a series of continuances and, as we noted in our Bench Memorandum of April 8, 1996, we attributed four of these continuances to the Defense and one of the continuances to the Government. *See, also United States v. Williams,* 1996 WL 539593 at *7–8 (E.D.Pa., September 17, 1996). We had a trial date of April 8, 1996 and received a letter from Defendant dated March 20, 1996, but not notarized until April 2, 1996, in which he claimed that his new CJA attorney had not communicated with him and had made racist remarks to him on or about March 7, 1996. On April 8, 1996, just before jury selection, we held a hearing and found that Attorney Bergstrom did not make racist remarks to the defendant. The Defendant claimed he was "feeling paranoid" and we reluctantly again continued the jury trial and sent the defendant for a psychiatric analysis to determine his competency to stand trial and waive counsel. After a stay at F.C.I. Butner, the Defendant was found to be fully competent. On June 24, 1996, we appointed another new lawyer, Jeffrey M. Lindy, Esquire, as CJA trial

counsel in place of Thomas Bergstrom, Esquire. Although the Defendant expressed some dissatisfaction with Mr. Lindy, he did allow him to continue to represent him at trial. *See, also United States v. Williams,* 1996 WL 539593 at *1–2.

Defendant raises numerous issues through his habeas corpus petition. He claims that: (1) trial counsel was ineffective for failing to request certain jury instructions; (2) trial counsel was ineffective for failing to timely object during trial and raise on appeal errors contained in this Court's instructions to the jury; (3) trial counsel was ineffective for failing to conduct critical pretrial investigations and failing to obtain "scribes and diaries" taken from a cooperating witness; (4) Defendant was denied the effective assistance of counsel where trial counsel's cross examination of one of the witnesses was limited and where trial counsel did not seek appellate remedy of this error; and (5) Defendant should be granted a new trial based on newly discovered evidence. Though Defendant raises numerous allegations of error, none of them have any merit. Consequently, his § 2255 motion will be denied and dismissed.

## II. Discussion

For the sake of simplicity, we will divide our discussion of Defendant's claims into those that are based on ineffective assistance of counsel and the one claim that is not.

### A. Ineffective Assistance of Counsel Claims

#### 1. Standard

The right to assistance of counsel is guaranteed by the Sixth Amendment of the United States Constitution. This right has been deemed fundamental by the Supreme Court; it cannot be denied to a

defendant absent intentional and actual waiver. *Johnson v. Zerbst,* 304 U.S. 458, 462, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The Supreme Court has set out a two-prong test to establish a claim of ineffectiveness of counsel. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A defendant must show both that: (1) his counsel's conduct was deficient and "fell outside the wide range of professionally competent assistance" and (2) the defendant was prejudiced as a result of that deficient conduct. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052; *United States v. DeRewal,* 10 F.3d 100, 104 (3d Cir.1993), *cert. denied,* 511 U.S. 1033, 114 S.Ct. 1544, 128 L.Ed.2d 196 (1994).

To satisfy the first prong, deficiency, a defendant must show that his lawyer's conduct fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. In evaluating such a claim, we "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052. We may not use the benefit of hindsight to second-guess tactical decisions made by an attorney unless they are unreasonable. *See Id.* at 690, 104 S.Ct. 2052; *Diggs v. Owens,* 833 F.2d 439, 444–445 (3d Cir. 1987), *cert. denied,* 485 U.S. 979, 108 S.Ct. 1277, 99 L.Ed.2d 488 (1988) ("An attorney is presumed to possess skill and knowledge in sufficient degree to preserve the reliability of the adversarial process and afford his client the benefit of a fair trial. Consequently, judicial scrutiny of an attorney's competence is highly deferential").

If the first prong is proven, a defendant must also prove the second prong, prejudice. To show prejudice, a defendant must show that there is a reasonable probability that there would have been a different outcome; that the deficient performance

"deprived the defendant of a trial whose result is reliable." *DeRewal,* 10 F.3d at 104 *citing Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. We must examine the trial with our focus not on the outcome, but on whether the error so affected the adversarial balance that the trial was rendered unfair and the verdict rendered suspect. *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

The *Strickland* test for ineffective assistance of counsel applies with equal force to analysis of the performance of appellate counsel. *United States v. Mannino,* 212 F.3d 835, 840 n. 4 (3d Cir.2000), *citing, Diggs,* 833 F.2d at 444–445. However, in the context of appellate representation it is difficult to demonstrate that counsel was incompetent, given the strong presumption that counsel's representation was professionally reasonable. *Smith v. Robbins,* 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). The test for prejudice under *Strickland* in the context of appellate representation is not whether defendant would likely prevail upon a remand but whether there is a "reasonable probability that the *appeal* would have been different had counsel's stewardship not fallen below the required standard." *Mannino,* 212 F.3d at 845 (*emphasis* in original).

Applying this jurisprudence to the case *sub judice,* it is clear that each of Defendant's ineffective assistance of counsel claims must fail.

### 2. Failure to Request Jury Instructions

Defendant contends that he was denied the effective assistance of counsel because trial counsel failed to request certain jury instructions, namely an instruction cautioning the jury about the reliability and circumstances of eyewitness identification, a specific unanimity charge, and a charge that the number of witnesses called is not controlling.

### a. The Identification Charge

At trial, the Government called Allentown police officer Edward Zucal, Jr. to testify that on the evening of July 19, 1995 he was jogging when he saw a suspicious vehicle circling the parking lot of one of the banks in question. Trial Transcript, Oct. 22, 1996 at 225. He testified on direct examination that he was jogging when he saw a vehicle with three black males, one driver and two passengers in the back, driving the wrong way around the bank parking lot. Officer Zucal testified that the three occupants met the description of suspects in an earlier bank robbery, and so he made a report of the vehicle and license plate. *Id.* at 226. On direct examination, Officer Zucal made no identification, nor was he asked to make an identification by the prosecutor.

On cross examination, defense counsel began by asking "By the way, you don't recognize Mr. Williams, do you, on the counsel table?" *Id* at 227. Officer Zucal, despite never having been asked to pick defendant Williams out of a lineup or photo spread, testified that he did, in fact, recognize him as the "gentleman that was seated on the passenger side of the rear of the vehicle." *Id.*

Defendant claims that this identification was very damaging to the defense and that trial counsel should have at least requested the standard identification charge to caution jurors to carefully scrutinize the circumstances surrounding the identification. Memorandum in Support of Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2255, filed March 10, 2000, at 13–

14. Defendant contends that this failure by trial counsel amounts to ineffective assistance of counsel under *Strickland*.

This failure to request an identification jury instruction meets neither the deficiency nor the prejudice prong of *Strickland*. Trial counsel was not deficient in failing to request this charge for several reasons. First, the surprise identification by Officer Zucal was only a minor part of the case. The identification only placed Defendant at the scene of the crime the night before the robbery and not during the actual commission of the offence. In fact, in discussing the testimony of Officer Zucal in her closing argument, the prosecutor never even mentioned the identification, but instead merely highlighted the fact that he saw a suspicious vehicle and made a report. Trial Tr., Oct. 29, 1996 at 86. The Court did instruct the jury that they should ask themselves if the witnesses had "the opportunity and the ability to observe the things they testified about." Trial Tr., Oct. 29, 1996 at 190. By requesting a further more special instruction, trial counsel might well have drawn the jury's attention to this identification and thus given it too much emphasis. Since trial counsel twice · moved for a mistrial based upon Officer Zucal's identification (Trial Tr., Oct. 22, 1996 at 231, Oct. 23, 1996 at 2–4), he obviously felt that the testimony would unfairly prejudice the jury against his client[2]. Downplaying the importance of this identification would have been a wise trial strategy which would be undermined by asking the court to give a specific instruction and thereby force the jury to focus on testimony which a reasonable trial

lawyer would want them to forget about. Thus, under the circumstances, we cannot say that trial counsel was deficient in failing to request a specific identification charge.

■ Furthermore, even if this failure were deficient, Defendant fails to meet the prejudice prong of the *Strickland* test. On rejecting Mr. Williams' direct appeal of his conviction, the Third Circuit Court of Appeals stated that "We agree with the government that the evidence against Williams on each of the counts charged was 'overwhelming' " *United States v. Williams*, No. 97–1099, at 7. In light of the overwhelming evidence supporting each of the counts charged there can be no doubt that there was no likelihood of a different outcome had such an instruction been requested.

### b. The Specific Unanimity Charge

■ Defendant next makes the claim that trial counsel was ineffective for failing to request a "specific unanimity charge" pursuant to *United States v. Beros*, 833 F.2d 455, 461 (3d Cir.1987). Since the instant case presents a drastically different situation than that in *Beros* and there was no need for a specific unanimity instruction, Defendant's claim that trial counsel was ineffective for failing to request the instruction must fail.

In *Beros*, the appellant was found guilty of "embezzling, stealing, abstracting or converting to his own use" funds of the Teamsters Joint Council 40 and the Pension Fund, in violation of 29 U.S.C. § 501(c) (1982) and 18 U.S.C. § 664(1982).[3]

---

2. In arguing for a mistrial, trial counsel stated at sidebar, "... I vociferously object. I think it is highly prejudicial. I think that the defense was totally caught off guard and by surprise ..." Trial Tr., Oct. 22, 1996 at 234.

3. In pertinent part, 29 U.S.C. § 501(c) (1982) stated that "any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property or other assets of a labor organization of which he is an officer, or by which he is

Beros requested at trial that the jury be given a specific unanimity instruction that it must unanimously agree upon both a particular theory of criminality and the specific transaction that it believed supported defendant's guilt under that theory. The district court granted the request for a unanimity instruction on the particular theory but not on the particular factual transaction. *Id.*, 833 · F.2d at 458. The Third Circuit Court of Appeals reversed stating that "[g]iven the range of possibilities by which the jury could have reached its verdict, and the possibility that individual jurors reasonably could have disagreed as to which act supported guilt, it was necessary that the district court in this case clearly instruct the jury regarding the required unanimity of its verdict." *Id.*

The Court based this decision on the fact that the allegations contained in the indictment, the complex, disjunctive wording of the statutes, and the evidence presented to support the conviction created a "significant potential" for the jury inappropriately to find that the defendant was guilty despite not agreeing on the facts or theories forming the basis of that guilty verdict. *Id.* For example, the § 501(c) charge accused Beros of embezzling, stealing, abstracting, and converting to his own use approximately $1,000 which was used to buy a first class plane ticket and pay for lodging for Beros and his wife. *Id.* In

support of the accusation, the government presented evidence that he used a Joint Council credit card to pay for airfare for himself and his wife, paid for the most expensive hotel suite as opposed to a regular room, and stayed in Florida on Joint Council funds even after his official duties had been completed. *Id.* Thus, the Third Circuit reversed the conviction because (1) the counts of the indictment alleged several transactions, any one of which could support a guilty verdict, and (2) the Government offered proof of several transactions, any one of which could support a guilty verdict. *Id.*, 833 F.2d at 458, 460.

There is no such likelihood of confusion in the case *sub judice.* "The *Beros* rule comes into play only when the circumstances are such that the jury is likely to be confused as to whether it is required to be unanimous on an essential element." *United States v. Cusumano,* 943 F.2d 305, 312 (3d Cir.1991). Here, like in *Cusumano,* the Government did not allege different sets of facts or transactions supporting Defendant's guilt, and thus the only possible confusion could come from the wording of the statute. "There is insufficient risk of confusion in such circumstances and the need for a specific unanimity instruction was not triggered." *Id.*[4]

Defendant points to no case in which the *Beros* rule has been extended to cover a

employed, directly or indirectly, shall be fined . . ."

Similarly, 18 U.S.C. § 664 (1982) provided that "[a]ny person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or any fund connected therewith, shall be fined . . ." *Id.*, 833 F.2d at 457 n. 1.

**4.** *See, also., United States v. Washington,* 127 F.3d 510, 513 (6th Cir.1997) ("A specific una-

nimity instruction is required only when one of three situations exists: 1) the nature of the evidence is exceptionally complex; 2) there is a variance between the indictment and proof at trial; or 3) there is tangible indication of jury confusion, as when the jury has asked questions of the court"); *United States v. Payseno,* 782 F.2d 832, 836 (9th Cir.1986) (holding that specific unanimity instruction only required where there is a *"genuine possibility of jury confusion* or that a conviction may occur as a result of different jurors concluding that the defendant committed different acts") (*emphasis* in original).

situation such as the one at hand. As such, there can be no merit to the claim that Defendant was denied the effective assistance of counsel where trial counsel did not make a request that was clearly inappropriate. To say that trial counsel's performance was deficient for failing to ask for an instruction to which no case shows that Defendant was entitled would clearly run contrary to the *Strickland* rule that we "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*, 466 U.S. at 689, 104 S.Ct. 2052.

Similarly, there is no merit to the argument that Defendant was prejudiced by this failure. First, since *Beros* does not apply in this case, even if trial counsel had requested the instruction it would not have been given and thus any deficiency would have absolutely no effect on the outcome of the trial. *See Keller v. Larkins*, 251 F.3d 408, 419 (3d Cir.2001) (holding that where expert testimony would have been admitted even over an objection, there could be no prejudice resulting from counsel's failure to object). Furthermore, even if the jury were given the instruction, in light of the "overwhelming" evidence supporting the Government's theory of the case, there can be no doubt that the result of the trial would have been exactly the same. At trial, the Government put forth a straightforward case against the Defendant, namely that he joined a conspiracy to commit bank robberies, committed bank robberies, and used and carried a firearm during and in relation to these bank robberies. There was no indication of any juror confusion nor any chance that Defendant could have been convicted on alternative theories of guilt. As such, his claim that trial counsel was ineffective for failing to request a specific unanimity instruction must fail.

### c. Number of Witnesses Is Not Controlling Charge

■ Defendant's final argument concerning jury instructions is that trial counsel was ineffective for failing to request a charge to the jury that the number of witnesses called is not controlling. Memorandum in Support of Petition For Writ of Habeas Corpus Pursuant to § 2255 at 15–16. This argument is wholly without merit and therefore must be denied.

Defendant neglects to mention that in instructing the jury prior to trial, we issued a very specific instruction that the number of witnesses called does not control. Jury Selection, Oct. 21, 1996 at 79–80. In fact, our comments to the jury went beyond any standard charge and, in addition to the standard warning that the number of witnesses is not controlling, we gave the jury a story and example to illustrate how absurd it would be to find for one side based solely on the fact that they called more witnesses. *Id.*[5] In light of the instruction given to the jury before trial, Defendant's claim amounts to noth-

---

**5.** This Court stated:

Now, in making up your mind in reaching a verdict, you don't make any decisions just because there may have been more witnesses on one side than the other. You don't reach a conclusion on a particular point just because there were more witnesses testifying for one side than another.

Many years ago, about 500 years ago, when the jury trial system first evolved in England, one of the first methods they used was to have trial by combat. Two people would fight it out and whoever won, won the lawsuit.

They rapidly decided that wasn't a very good way to do things because usually the bigger, stronger person won. The next thing they tried, if you can imagine such a thing, was the side that brought the most number of witnesses with them, won.

Now, if you could imagine, there is one case recorded about four hundred and some odd years ago which one side I think had 900 people there to vouch for them, and the other side only had eight hundred something, so the side with the most won. Well, they rapidly

ing more than a request for relief based on the fact that trial counsel was ineffective for failing request that the Court repeat an instruction previously given.

Such a claim fails to meet either prong of the *Strickland* test. First, we cannot say that trial counsel's performance was deficient and not professionally reasonable for failure to request that the jury receive a charge for the second time. Such a request might have, to the defense's detriment, highlighted the great disparity in the weight of the evidence. Second, there can be no doubt that trial counsel's failure to request the charge does not satisfy the prejudice prong of the *Strickland* test. This Court, during its charge to the jury, repeatedly instructed that the Government had the burden of proving the defendants guilty beyond a reasonable doubt. Trial Tr., Oct. 29, 1996 at 184, 185, 186–187, 222. In addition we instructed the jury that, under our system of justice, defendants were presumed innocent. *Id.* at 184, 222. Most importantly, we made clear to the jury that defendants bore no burden to put on any evidence or to call any witnesses. *Id.* at 186–187. These instructions, combined with the earlier instruction and the overwhelming evidence supporting the guilty verdict demonstrate that Defendant has not shown any indication of prejudice let alone a reasonable probability of a different outcome which is necessary to obtain relief under *Strickland. DeRewal*, 10 F.3d at 104 *citing Strickland*, 466 U.S. at 690, 104 S.Ct. 2052.

### 3. Failure to Object to Portions of the Court's Jury Charge

Defendant also claims that trial counsel was ineffective for failure to object to "the

---

decided that was a pretty dumb way to do things too.

Look, what I'm saying to you on the bottom line is, you don't make a decision just because there may be more witnesses on one side or

numerous constitutional and technical errors contained in the court's jury charge." Since none of the comments which Defendant points to contain any constitutional or technical errors, his claim that trial counsel was ineffective for failure to object to the comments wholly lacks merit and must be denied.

#### a. Standard

■ When jury instructions are challenged, the Third Circuit will "consider the totality of the instructions and not a particular sentence or paragraph in isolation." *United States v. Coyle*, 63 F.3d 1239, 1245 (3d Cir.1995). The issue to be determined is "whether, viewed in light of the evidence, the charge as a whole fairly and adequately submits the issues in the case to the jury." *United States v. Zehrbach*, 47 F.3d 1252, 1264 (3d Cir.1995) (internal quotation marks omitted).

#### b. Misstatements of Law

Defendant contends that during the charge to the jury, this Court improperly expressed its own opinion and misstated the law and that trial counsel's failure to object to the comments amounted to ineffective assistance of counsel under *Strickland*. For the reasons stated below, this argument is wholly without merit and the claims are therefore denied.

■ First, Defendant claims that we improperly expressed our opinion and thereby lowered the Government's burden of proof when we instructed the jury that

there are few things in this world that we know with absolute certainty. Some-

---

the other. Your job is to think about the testimony of all the witnesses and to decide how much of it you believe and how much of it you do not believe. *Id.*

times someone likes to say death and taxes, but really there are very [few] things in the world that we know with absolute certainty.

Trial Tr., Oct. 29, 1996 at 186. This claim fails for a variety of reasons. First, this statement is not a comment on the evidence at all, but merely a common sense expression of the reasonable doubt standard. Defendant points to absolutely no precedent indicating that a similar comment was improper, but simply makes the blanket assertion that the comment goes "well beyond the suggested standard instructions. *See* Devitt, Blakmar and O'Mally *Federal Jury Practice and Instructions* § 12.10. *See* Exhibit B." Memorandum in Support of Petition at 18. Furthermore, Defendant completely fails to explain how this comment lowered the reasonable doubt standard to be applied by the jury.

The comment is taken completely out of context and is part of a standard instruction given by judges throughout the federal court system and Pennsylvania. *See* Federal Judicial Center, Pattern Criminal Jury Instructions (1987) § 21 ("There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt"). Defendant neglects to point out that this comment was but one paragraph in a lengthy instruction on the reasonable doubt standard. In instructing the jury in regards to the reasonable doubt standard, we stated, *inter alia,* that

In a criminal case, the burden of proof must be more powerful than [the fair weight or preponderance of the evidence], it is beyond a reasonable doubt. The Government must prove its case beyond a reasonable doubt. It must prove each and every element of the offenses charged beyond a reasonable doubt.

What is a reasonable doubt? A reasonable doubt is a doubt that would cause a reasonably careful and sensible person to hesitate before acting upon a matter of importance in their own affairs.

In order for there to be proof beyond a reasonable doubt, you must be firmly convinced that each defendant is guilty, and you may not find a defendant guilty based upon mere speculation, suspicion or probability of guilt. There must be proof beyond a reasonable doubt. And that is the definition and the only definition which you are to accept, the definition that I have just given to you.

Now, I said there must be proof beyond a reasonable doubt. I should say that *there are very few things in this world that we know with absolute certainty. Sometimes someone likes to say death and taxes, but really there are very [few] things in the world that we know with absolute certainty.*

And in criminal cases, the law does not require proof to a mathematical certainty, or proof that overcomes every possible doubt. The Government does not have to call all possible witnesses, it doesn't have to present all possible evidence. It only has to present enough evidence or enough witnesses to prove its case beyond a reasonable doubt.

If based upon your consideration of the evidence you are convinced beyond a reasonable doubt that a defendant is guilty, and give separate consideration to each, then you should find the defendant guilty.

If on the other hand you have a reasonable doubt that a defendant is guilty, then you should give him the benefit of that doubt and find him not guilty.

Now, I will instruct you at this time, and I think I told you at the beginning that the burden was on the Government, not on the defense ...

Trial Tr., Oct. 29, 1996 at 185–186 (*emphasis* added).[6]

As Defendant supplies no reasoning why the comments were improper we find that trial counsel's performance was not deficient for failing to object to this comment. Furthermore, there is no prejudice under *Strickland,* because the rest of the jury instruction on reasonable doubt ensured that the jury would apply the appropriate standard.

■ Defendant further contends that in instructing the jury on the agreement element of the conspiracy charge, we improperly expressed our opinion by stating:

A formal agreement would be extraordinary. I've been a Judge for 18 years, I don't think I ever heard of a conspiracy where the conspirator is going to a lawyer to draw up a contract to agree, you know, to do whatever they were going to do, because a conspiracy is usually a secret if the purpose is to break the law.

Trial Tr., Oct. 29, 1996 at 199. Again, Defendant makes no indication why this statement was inappropriate, nor does he point to any case suggesting that this statement or anything remotely like this statement was inappropriate. Defendant again simply copies a suggested standard jury instruction and claims that the departure from this was inappropriate.

We fail to see how trial counsel was ineffective for failing to object to this instruction. It is a commons sense expression of what is clearly the law. In fact, it closely resembles portions of the suggested instruction supplied by Defendant. *See* Devitt, Blakmar and O'Mally *Federal Jury Practice and Instructions* § 28.04, Memorandum in Support of Petition, Exhibit B ("A conspiracy or agreement to violate the law, like any other kind of agreement or understanding, need not be formal, written, or even expressed directly in every detail").[7] Furthermore, any possible impact of the statement must be taken in the context of the entire jury instruction in which we informed the jury, *inter alia* (1) that a conspiracy must be formed willingly, voluntarily, and with specific intent and (2) that "[m]ere similarity of conduct, or the mere fact that the participants in an offense associate together and discuss com-

---

**6.** We fail to see how this instruction is substantively different or less beneficial to a defendant than this suggested instruction supplied by Defendant, copied from Devitt, Blackmar and O'Mally *Federal Jury Practice and Instructions* § 12.10. Memorandum in Support of Petition, Exhibit B. Moreover, Defendant gives no explanation as to why this suggested instruction would be better or more appropriate.

... It is not required that the government prove guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is a doubt based upon reason and common sense—the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to

rely and act upon it in the most important of his or her own affairs.

Unless the government proves, beyond a reasonable doubt, that the defendant has committed each and every element of the offense charged in the indictment, you must find the defendant not guilty of the offense. If the jury views the evidence in the case as reasonably permitting either of two conclusions—one of innocence, the other of guilty—the jury must, of course, adopt the conclusion of innocence.

**7.** The suggested instruction also states that "To prove the existence of a conspiracy or an illegal agreement, the government is not required to produce a written contract between the parties or even produce evidence of an express oral agreement spelling out all of the details of the understanding ..." *Id.*

mon aims in not enough." Trial Tr., Oct. 29, 1996 at 199.

We find that neither prong of the *Strickland* test is satisfied. Trial counsel's performance in failing to object to a perfectly appropriate instruction cannot be considered deficient. Even if we were to accept the argument that any reasonable attorney would have objected to this instruction, there is no prejudice here. First, even had trial counsel objected, we would have overruled the objection. *See Keller,* 251 F.3d at 419. Second, even if we had, as Defendant seems to suggest we must have, simply given the standard instruction, in light of the overwhelming evidence supporting the conspiracy charge, there is no reasonable probability that the outcome of the trial would have been any different.

#### c. Improper Statements of Opinion

 Defendant contends trial counsel was ineffective for failing to object to certain comments by the Court. It is well-settled law that a trial judge may comment upon the testimony or the evidence or analyze the evidence, but that he must not assume the role of a witness, add to the testimony, mislead the jury, or show favoritism to one side. *Quercia v. United States,* 289 U.S. 466, 470, 53 S.Ct. 698, 77 L.Ed. 1321 (1933), *United States v. Olgin,* 745 F.2d 263 (3d Cir.1984), *cert. denied, O'Brocta v. United States,* 471 U.S. 1099, 105 S.Ct. 2321, 85 L.Ed.2d 840 (1985). In evaluating the propriety of a trial judge's comments during a charge to the jury, a reviewing court should consider the materiality of the comment, the strength of the challenged comment, the efficacy of any curative instructions, and the prejudicial effect of the comments in light of the jury instructions as a whole. *Olgin,* 745 F.2d at 268–269.

At trial, both during jury instructions and jury selection, this Court gave numerous instructions that the jury, and the jury alone, was the sole judge of any and all facts in this case, even if their recollections or opinions differed from those of the Court. In so instructing the jury we stated:

> Now, the determination of all the facts in this case is exclusively for you, the jury. If your recollection of the evidence differs from that expressed by the Court or by the lawyers, it is your recollection that is to govern.

> If your judgment of what the evidence establishes differs from that suggested by the attorneys or by me, you should follow your own judgment . . .

> Simply put, when it comes to the facts you're the boss. When it comes to the law, I'm the boss.

Trial Tr., Oct. 29, 1996 at 196–197. We further went on to state:

> Now, I'm going to go over the legal elements of the three charges in this case. When I do that, I may touch briefly on the testimony. Please don't think that I'm in any way emphasizing what I do touch on, or de-emphasizing what I don't touch on.

> All the evidence is important, you should consider all of it. Please remember also that if I say anything, my recollection of the evidence that differs from what you recall, it's your recollection as to the facts, as to the evidence that controls.

*Id.* at 197. *See also, Id.* at 181 ("You must decide this case on the facts as you and you alone find them to be"), *Id.* at 187 (". . . you are the sole judges of the facts . . ."), *Id.* at 189 ("Now, you're the judges of the credibility and the believability of the witnesses. What witnesses you be-

lieve, what testimony you believe").[8]

Despite these cautionary instructions, Defendant claims that trial counsel was ineffective for failing to object to four isolated comments by this Court in going over the elements of the offenses charged. Since none of the comments were improper and since the jury was given numerous and lengthy warnings that they and they alone were to be the sole judge of all facts, these claims lack merit and therefore must be denied.

▮ The first comment with which Defendant finds fault occurred during our instruction to the jury in cautioning them about the credibility and reliability of the witnesses. Taking two sentences completely out of context, Defendant claims that the statement "[t]hese things happened back in 1995. It started in January, almost two years ago," (Trial Tr., Oct. 29, 1996 at 190) unfairly told the jury that "a conspiracy not only existed, but in fact had been proven." Memorandum in Support of Petition at 19. What he conveniently fails to point out is the context in which this statement was made. The instruction reads in part:

> Did the witnesses have a bias, did they have a motive to be untruthful, or a particular reason not to tell the truth? Were they interested in the outcome of the case, would they be hurt or helped depending upon which way you decide the case? How good was their memory? *These things happened back in 1995. It started in January, almost two years*

*ago.* Did they recall what you think they should have recalled? Did they appear to have a good memory? Did they have the opportunity and the ability to observe and hear the things that they testified about? How accurate were they?

Trial Tr., Oct. 29, 1996 at 190 (*emphasis added*). The argument that trial counsel was ineffective for failing to object to this instruction is entirely without merit. The instruction was an attempt to caution the jury about how to evaluate witnesses, in particular whether their memory of events that occurred two years before their testimony was adequate. To say that trial counsel's performance was inadequate for failing to object to this instruction makes no sense. The instruction was clearly beneficial to Mr. Williams as it cautioned the jury to carefully scrutinize the witnesses against him. Furthermore, there is no possibility of satisfying the prejudice prong of *Strickland.* The statement that "these things happened back in 1995" is perfectly consistent with the defense theory of the case. No one challenged the fact that there were bank robberies in 1995; it was simply the defense's contention that Defendant was not a participant.

▮ Defendant next claims that trial counsel was ineffective for failing to object when this Court, in cautioning the jury that they should be extra careful in evaluating the testimony of informers and accomplices, stated

---

8. *See also,* Jury Selection, Oct. 21, 1996 at 70–71 ("It will be your duty as jurors, and yours alone, to determine what the true facts are from the evidence presented during trial. You will then apply the facts as you, and you alone, find them to be ..."), *Id.* at 76–77 ("Please rest assured that if I do anything up here to cause you to think that I have any feelings about this case, that number one, it's completely inadvertent, and, number two,

that I do not have any feelings about this case one way or the other. Moreover, even if I did have any feelings about this case, and I don't, it would be irrelevant, because you see ladies and gentlemen, at the end of this case I am not going to decide this case, the attorneys and the parties aren't going to decide it, you are going to decide it"), *Id.* at 77 ("You are the judges of the facts.").

And as I said, the final decision as to who fits into this category is up to you, but I believe that from the testimony of Lamar Peterson, Curtis French, Luis Avila, Jill Moore and Ralph Logan that they would be both accomplices and informants.

Trial Tr., Oct. 29, 1996 at 193. What Defendant conveniently fails to point out is that we immediately followed this sentence by stating, "And I will tell you now that the testimony of accomplices and informers should be received and weighed with great care and caution." *Id.* This instruction is nothing more than a warning to the jury that they should be especially careful in evaluating the testimony of these witnesses, an instruction perfectly in line with the defense theory of the case that the witnesses were lying. Furthermore, we stated that "from the testimony" the witnesses would be considered accomplices and informants, thus informing the jury not that this Court had any special reason to believe that the witnesses were accomplices, but that such a factual determination could be supported by the evidence at trial.

We find that trial counsel was not ineffective for failing to object to this instruction. He was not deficient in failing to object because (1) there was nothing objectionable in the instruction and (2) the instruction, taken as a whole, was clearly the type of instruction that is beneficial to the defense, namely that important Government witnesses present special credibility problems. In addition, there is no prejudice under *Strickland* here, because (1) the comment was a fair expression of the Court's opinion; (2) the instruction bolstered the defense theory of the case which was that these witnesses were unre-

liable; and (3) the countless and lengthy warnings that the jury's recollection and opinions of the witnesses controlled over the Court's prevented the jury from substituting the Court's opinion for their own.

### d. Improper Emphasis on the Government's Theory of the Case and Misstatement of the Defense Theory

Defendant next seeks relief claiming that trial counsel was ineffective for failing to object to what he characterizes as the improper emphasis on the Government's theory of the case and misstatement of the Defense theory of the case. This Court did not place any improper emphasis on the Government's theory of the case, nor did we misstate the defense theory. As such, Defendant's claim that trial counsel was ineffective for failing to object lacks merit and therefore must be denied.

▇▇▇ Defendant complains that in charging the jury, the Court alluded to the Government's theory of the case ten times and referred to the Defense theory only once. He supplies no precedent for the proposition that a simple disparity in the number of references to one side is problematic.[9] Other than simply going over all the evidence and all of the witnesses, this Court had no choice but to make more references to the Government's theory. On closing, the prosecutor went over, in great detail, all of the incidents and transactions forming the basis for the charges. The Defense understandably did not. Thus, to touch on the evidence concerning each element, the Court had no choice but to refer to the Government's arguments. The only other option would be to go over the massive amount of evidence a second time. Defendant himself points out that

---

9. Since a defendant is under no obligation to make any arguments or put forth any theory, if a defendant does remain completely silent and make no arguments, under Defendant's argument, any reference to the Government's theory in such a case would be improper.

"It is well settled that 'extensive comment on the evidence should be avoided' " Memorandum in Support at 21, quoting *United States v. Glasser*, 750 F.2d 1197, 1206 (3d Cir.), *cert. denied, Erdlen v. United States*, 471 U.S. 1018, 105 S.Ct. 2025, 85 L.Ed.2d 306 (1985). By referencing the Government's arguments, we were able to avoid extensive comment on the evidence.

Thus we find that trial counsel was not ineffective for failing to object to the references to the Government's case. Had counsel objected and his objection been sustained, the Court would have had to go over all of the Government's evidence a second time. A wise trial lawyer would not want the Court, in effect, making a second closing argument on behalf of the Government, and as such we cannot say that trial counsel was deficient for making such a reasonable decision. Furthermore, even if this failure to object were deficient, Defendant fails to satisfy the prejudice prong of *Strickland*. In giving the charge to the jury, we instructed them that the Court was not emphasizing one part of the case over another and that the jury's recollection of the evidence controls over that of the court. Trial Tr., Oct. 29, 1996 at 197. This, plus the overwhelming evidence supporting the guilty verdict demonstrates that any failure by trial counsel does not call into question the reliability of the final verdict.

■ Defendant also claims that trial counsel was ineffective for failing to object when the Court stated to the jury, "Now, the government maintains it has presented a massive amount of evidence to you." *Id.* at 217. According to the Defendant, this comment was inappropriate because "Not once, however, in her two opportunities to address the jury during her closing arguments did the prosecutor, in her zealous advocacy, ever use the term 'massive' or in any way refer to the cumulative weight of

the evidence." Memorandum in Support of Petition at 22. While it is true that the Assistant United States Attorney never actually used the word "massive," there is no doubt whatsoever that her contention was that Government did, in fact, present a massive amount of evidence. In fact, in beginning the closing statement, the prosecutor stated "I wish I could say that I'll be brief but there is a lot of evidence in this case." In essence, Defendant urges this Court to hold that trial counsel was ineffective for failing to object to what amounts to our use of a synonym. We cannot see the deficiency in failing to ob-. ject to a slight variation in vocabulary, nor can we see how such variation was in the slightest bit prejudicial. Accordingly, we hold that comment was an appropriate summary of the Government's argument and that trial counsel was not ineffective for failing to object.

■ Defendant next contends that when this Court stated "Now, the defense maintains that the government has not proven its case beyond a reasonable doubt," we misstated the defense theory of the case. According to the Defendant, this statement somehow indicated to the jury that the defense's main focus was the sufficiency of the evidence. We find this claim to be borderline frivolous. We completely fail to see how a statement that the defense claims that the Government has not met its burden amounts to a characterization of the defense as one challenging the sufficiency of the evidence. The statement was a simple, straight-forward summary of the defense's theory of the case, and anyone who listened to closing arguments or read the transcript could not miss the fact that the defense did indeed maintain that the Government did not prove its case beyond a reasonable doubt. *See, e.g.* Defense Closing Statement, Trial Tr., Oct. 29, 1996 at 133 ("I don't have to prove it,

**304**

they've got to prove it beyond a reasonable doubt ..."); *Id.* at 142 ("Remember your burden—I'm sorry—remember their burden. Your task is to hold them to their burden, which is to convict beyond a reasonable doubt."). Accordingly, we hold that trial counsel was not ineffective for failing to object.

### e. Improper Instructions that Certain Facts had been Established

Next, Defendant claims that he was denied the effective assistance of counsel because trial counsel failed to object to certain statements that he claims were improper instructions by the Court that certain essential facts had been established. While Defendant is correct in pointing out that "'a plea of not guilty places all issues in dispute, even the most patent truths,'" Memorandum in Support of Petition at 23, *quoting United States v. Mentz,* 840 F.2d 315, 320 (6th Cir.1988), there is no merit whatsoever to the claim that this Court instructed the jury that any facts had been established. As such the claim that trial counsel was ineffective for failing to object is denied.

 First, Defendant claims this Court improperly implied to the jury that an essential element of the bank robbery charge, that the banks were federally insured, had been established when we stated

First with regard to each robbery, that the financial institution in question was either chartered and insured by the Federal Government. By insured we mean FDIC ... Now you will recall if there was evidence with regard to the first element that each of these financial institutions was federally insured. I believe she asked each of the representatives about that.

Trial Tr., Oct. 29, 1996 at 209–210. We find this argument to be borderline frivolous. The statement does not in any way imply or suggest that any facts had been established. There is no assertion of fact whatsoever. We merely told the jury that the Government had inquired of the bank representatives about whether they were federally insured. Although each of the representatives testified that they were, in fact, federally insured, this Court did not remind the jury of this, but instead pointed the jury to the testimony about the FDIC element. The instruction, taken as a whole, told the jury in no uncertain terms that they had to find that the Government had established that the banks were federally insured and in no way did it suggest to the jury that these facts had been proven. As such we hold that trial counsel was not ineffective for failing to object.

Defendant next claims that trial counsel was ineffective for failing to object during the instruction on the "assault" element of the bank robbery charge when this Court stated "I believe if you go over each of those elements, if you believe the testimony you will find that there is evidence from which you could find and could infer these necessary elements." *Id.* at 213. Again, this argument is completely meritless. We did not instruct the jury that anything had been established, and merely stated that *if* they believed the Government's witnesses they *could* find and *could* infer the necessary elements. As the statement did not instruct the jury that anything had been established, we find that trial counsel was not ineffective for failure to object.

 Similarly, Defendant contends that trial counsel was ineffective for failing to object during the Court's instruction on the definition of a firearm in which we stated, *inter alia,* "Look, I think we know what a firearm is, you know. It includes a handgun, a rifle, shotgun or MAC, I don't know, Big Mac, a Mac–10 or whatever it was. You all have your recall, not a Big

Mac, that's something else. My daughter is always bringing those home." [10] *Id.* at 214 [11]. This statement does not instruct the jury that any fact had been established, and merely informs the jury that the weapon that the Government contended Mr. Williams used and carried fit within the legal definition of a firearm. Accordingly, we find that trial counsel was not ineffective for failing to object.

### f. Failure to Raise on Appeal

Defendant contends that not only was trial counsel ineffective for failing to object to all of the above statements at trial, but that he was denied the effective assistance of counsel for failure to raise the same claims on direct appeal. Applying *Strickland* to the appellate representation at hand, we find that the Defendant was not denied the effective assistance of counsel for failure to raise theses claims on direct appeal.

As stated above, the *Strickland* test applies with equal force to the evaluation of appellate counsel. *United States v. Mannino*, 212 F.3d at 840 n. 4 (3d Cir.2000), *citing, Diggs*, 833 F.2d at 444–445. To show that appellate counsel was deficient, Defendant must do more than show that counsel failed to raise every non-frivolous issue, for an appellate counsel is under no obligation to raise all issues, but may pick and choose so as to maximize the chances of a successful appeal. *Smith v. Robbins*, 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000), citing *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). "Gen-

erally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1986), quoted in *Smith*, 528 U.S. at 268, 120 S.Ct. 746. Defendant makes no showing or allegation that the claims raised in his § 2255 motion are any stronger than those that were raised on his unsuccessful appeal. Furthermore, as all of Defendant's claims lack merit, we find that his lawyer was not deficient for railing to raise them on direct appeal.

Even if failure to raise these claims on direct appeal were deficient, to satisfy the prejudice prong of *Strickland*, Defendant would need to show a likelihood of success on appeal if these issues were raised. *Mannino*, 212 F.3d at 845. Since all of his claims are without merit, we find that there was no likelihood of success on appeal. Furthermore, even if there were merit to the claims, in light of the Third Circuit's finding that the evidence supporting Defendant's guilt was "overwhelming" any error would be deemed harmless and the result of the appeal would have been the same.

Since Defendant has not satisfied either prong of the *Strickland* test, we find that Defendant was not denied effective assistance of appellate counsel for failure to raise these claims on direct appeal.

### 4. Failure to Conduct Critical Pretrial Investigation

Defendant's next claim is that he was denied the effective assistance of counsel

---

**10.** The Court became confused as to the technical name of the weapon in question. However, given our numerous instructions that their recollection controlled over that of the Court there was no danger that this confusion could have influenced the jury.

**11.** Again, Defendant conveniently fails to point out that we preceded this statement by giving the legal definition of a firearm. *Id.* ("a firearm is defined by the law as any weapon which will or is designed to or may readily be converted to expel a projectile by the action of explosives").

where trial counsel failed to conduct critical pretrial investigations. Defendant claims that trial counsel was ineffective for (1) failure to investigate and interview one Desmond Spotwood and (2) failure to obtain "scribes and diaries" taken from one of the Government's witnesses, Curtis French. Since Defendant fails to show any reasonable probability that performing either of these tasks would have resulted in exculpatory evidence, his claim must be denied.

 Defendant claims that trial counsel's failure to investigate and interview Desmond Spotwood amounted to ineffective assistance of counsel. According to the Defendant, he identified Mr. Spotwood to trial counsel, Jeffrey M. Lindy, Esquire, as a witness who could provide evidence of collusion amongst government witnesses. Mr. Lindy has submitted a sworn affidavit in which he states that (1) he has no recollection of the Defendant or anyone on his behalf requesting that he investigate Desmond Spotwood; (2) it is his practice to make notes in his file when a client requests that a potential witness be interviewed; and (3) he has searched his files and found no record, note, correspondence, memorandum, or other document concerning Desmond Spotwood.[12] As noted in our introduction above, and explained in detail in previous Bench Memoranda, Defendant has a long history of harassing conduct aimed at delaying court proceedings, obstructing justice, threatening and assaulting witnesses, and lying about conversations between himself and his attorney. He has also been sentenced to death for murder. We have little doubt that he is lying in this case and that he never requested that counsel investigate or interview Mr. Spotwood or even mentioned

such a name. However, for purposes of this discussion we will assume that Defendant did, in fact, make such a request.

 A claim of ineffective assistance of counsel for failure to investigate must, of course, satisfy both prongs of the *Strickland* test. For a failure to investigate to constitute ineffective assistance, a defendant must show what exculpatory evidence would have been uncovered by further investigation. *United States v. Askew*, 88 F.3d 1065, 1073 (D.C.Cir.), *cert. denied*, 519 U.S. 986, 117 S.Ct. 444, 136 L.Ed.2d 340 (1996), quoting *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987). Even if an attorney is deficient in the decision not to conduct pretrial investigation, a defendant must show a reasonable likelihood that, but for the deficiency, the result of the proceeding would have been different. *Lewis v. Mazurkiewicz*, , 915 F.2d 106, 115 (3d Cir.1990). Thus, at the least, a defendant seeking relief under this theory must show a reasonable likelihood that the investigation would have "produced useful information not already known to trial counsel." *Id. See also, United States v. Porter*, 924 F.2d 395, 397 (1st Cir.1991) (holding that failure to interview witnesses could not constitute ineffective assistance without a showing that the investigation would have helped defendant); *United States v. Lewis*, 786 F.2d 1278, 1282 (5th Cir.1986) (holding that defendant did not show ineffective assistance of counsel where defendant failed to point out any evidence that would have been produced, let alone evidence that would undermine confidence in the outcome of the trial).

Defendant makes no showing of the evidence that could have been obtained

---

12. Two copies of this affidavit were sent to Robert J. Levant, Esquire, habeas counsel, on April 16, 2001, one of which to be forwarded to Defendant. Neither Defendant nor his counsel have made any response.

through an interview or investigation of Desmond Spotwood. He merely makes the blanket assertion that Mr. Spotwood is someone who could provide "direct evidence" of collusion amongst government witnesses and makes not even an attempt to define what this evidence is. Since Defendant has not made any showing that an investigation or interview of Mr. Spotwood would have produced evidence which could have undermined the confidence in the outcome of his trial, we find that his claim of ineffective assistance of counsel for failure to investigate must be denied.

 Similarly, Defendant also claims that he was denied the effective assistance of counsel because counsel failed to obtain "scribes and diaries" taken from a Government witness, Curtis French. Again, Defendant makes absolutely no showing as to what type of evidence would have been revealed by this discovery. In fact, Defendant admits as much as he states that failure to obtain these documents *"may* have prejudiced Petitioner in his trial and *may* supply a claim for ineffective assistance of counsel." Memorandum in Support of Petition at 27–28 *(emphasis* added). This speculative and circulative claim is wholly without merit and Defendant cannot obtain a hearing or discovery simply by claiming that some documents might possibly produce exculpatory evidence. Bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing in habeas corpus matters. *Mayberry v. Petsock,* 821 F.2d 179, 185 (3d Cir.1987).

Defendant also states that "[b]y separate motion, Petitioner intends to seek their production, and reserves the right to amend this petition should they reveal exculpatory information." Memorandum in Support of Petition at 28. Defendant has not made a separate motion for document production. However, to the extent that this sentence could be deemed a request for discovery, we find that since Defendant has made no showing as to what the documents might reveal, he is not entitled to their discovery.

## 5. Failure to Raise Denial of Sixth Amendment Right to Confront Witnesses on Direct Appeal

 At trial, the Government called to the stand a number of cooperating witnesses including Luis Avila and Lamar Peterson. Lamar Peterson was represented by Anthony Bruneio, Esquire, in the case. On cross examination of Luis Avila, defense counsel attempted to bring out the fact that Mr. Bruneio, Peterson's attorney, was present at two of the initial F.B.I. interviews of Mr. Avila. The Government objected on relevance grounds, arguing that at the time of these interviews Mr. Avila was not a suspect and was only being interviewed to learn the location of a fugitive, cooperating witness Curtis French, and that the Government could only rebut the inference that Mr. Bruneio did something improper by calling Mr. Bruneio to the stand to testify as to conversations between a client and his attorney. Trial Tr., Oct. 25, 1996 at 27–29. We sustained the objection.

Rule 611(b) of the Federal Rules of Evidence provides that "Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witnesses. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination."

 District Courts have wide discretion in limiting cross-examination. *United States v. Casoni,* 950 F.2d 893, 918 (3d Cir.1991) "A restriction will not constitute reversible error unless it is so severe as to constitute a denial of the defendant's right to confront witnesses against him

and it is prejudicial to substantial rights of the defendant." *Id.* at 918–918, quoting *United States v. Adams,* 759 F.2d 1099, 1110 (3d Cir.), *cert. denied,* 474 U.S. 906, 106 S.Ct. 275, 88 L.Ed.2d 236 (1985). The Confrontation Clause requires only "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (internal quotation marks omitted).

Sustaining the objection to limit the cross-examination was an entirely proper exercise of judicial discretion. Defense counsel's proffer indicated that there was little probative value in the line of questioning as Mr. Avila was not, during these meetings, implicating Mr. Williams at all and was not even a suspect at the time. Furthermore, allowing the line of questioning would have necessitated allowing the Government to call attorney Bruneio in rebuttal and hold a lengthy hearing about the existence of an exception to the attorney-client privilege. Proof of the "crime-fraud" exception was highly unlikely as even defense counsel admitted that he did not think that attorney Bruneio did anything improper. Trial Tr., Oct. 25, 1996 at 29.

In addition, Defendant has not shown any violation of the Confrontation Clause, because he was not deprived of an effective opportunity for cross-examination. *Delaware v. Van Arsdall,* 475 U.S. at 679, 106 S.Ct. 1431. Though we did not allow the line of questioning about attorney Bruneio's presence at several meetings, trial counsel still conducted a lengthy and effective cross of Mr. Avila. During this questioning trial counsel (1) inquired about discussions with the prosecutor or police the night before his testimony (Trial Tr., Oct. 25, 1996 at 18), (2) inquired about the numerous and lengthy meetings with the prosecutor and law enforcement officials (*Id.* at 22–25), (3) brought out the fact that Mr. Avila had lied on several occasions to law enforcement officials (*Id.* at 25), (4) established that Mr. Avila was making a deal with the Government and had a motive to lie (*Id.* at 31), (5) inquired about Mr. Avila's criminal past (*Id.*), and (6) even attempted to show that Mr. Avila was the suspect in photographs of the bank robberies whom the Government had identified as the Defendant. *Id.* at 21–22.

As this Court's ruling limiting part of the cross-examination was an entirely proper exercise of judicial discretion we find that counsel was not ineffective for failing to raise this claim on direct appeal. In this Circuit, a District Court's ruling concerning the allowable scope of cross-examination is reviewed for an abuse of discretion. *United States. v. Werme,* 939 F.2d 108, 117 (3d Cir.1991). As we identified proper factors for the decision and decided that the balance warranted sustaining the Government's objection, we find no reasonable likelihood that the result of Defendant's direct appeal would have been any different had his counsel raised this claim. Furthermore, in light of the Court of Appeals' finding that Defendant's conviction was supported by "overwhelming" evidence we are confident that any error in the exercise of our discretion would be deemed harmless. Accordingly, Defendant's claim that he was denied the right to confront witnesses against him and that he was denied effective assistance of counsel for failure to raise this issue on direct appeal is denied.

**B. Newly Discovered Evidence**

■ Defendant's final claim is that he should be granted a new trial based on newly discovered evidence. Defendant now claims that one David Zebrowski, an

inmate incarcerated with Lamar Peterson, can testify that Peterson confessed to Zebrowski that the testimony against Defendant was false.

■ When a federal prisoner did not present his claims in the trial and appellate courts, he must show cause for his procedural default and actual prejudice resulting therefrom. *United States v. Frady*, 456 U.S. 152, 166–168, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). The Third Circuit has held that newly discovered evidence can only warrant a new trial under § 2255 if the following five requirements are satisfied.

(1) The evidence must be in fact newly discovered, i.e., discovered since trial;

(2) facts must be alleged from which the court may infer diligence on the part of the movant;

(3) the evidence relied on must not be merely cumulative or impeaching;

(4) it must be material to the issues involved; and

(5) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*Government of Virgin Islands v. Lima*, 774 F.2d 1245, 1250 (3d Cir.1985), citing *United States v. Iannelli*, 528 F.2d 1290 (3d Cir.1976). While this "confession" to Mr. Zebrowski might be material to the case at hand, Defendant has completely failed to satisfy any of the other requirements listed above.

Defendant has produced no evidence or made any allegation that the evidence was actually newly discovered since trial. Furthermore, even if we assume that Defendant did not discover this evidence until the time when Mr. Zebrowski prepared his affidavit (March 15, 1998), under the second requirement, he has the burden of showing facts from which this Court can infer diligence. Defendant has submitted no such facts. The third requirement is not satisfied because this evidence is merely impeaching.

Finally, even if the first four factors had been satisfied, this evidence is not of such nature as to probably produce an acquittal on retrial. There is every indication that no jury would believe the story of Mr. Zebrowski, given Defendant's past history, detailed above, of obstructing justice, threatening and intimidating witnesses, and even assaulting an inmate, Ralph Logan, who refused to give false testimony on his behalf. In addition, even if the story were to be believed, there is a tremendous amount of independent and reliable evidence corroborating the testimony of Lamar Peterson and the other cooperating witnesses. As such, we find that this "newly discovered evidence" would not have any likelihood of producing an acquittal.

Defendant has failed to satisfy the requirements necessary to warrant a new trial based on newly discovered evidence. Accordingly, this claim is denied.

## III. Conclusion

For the reasons discussed above, all of Defendant's claims are entirely without merit. Defendant's motion for relief under § 2255 is therefore denied.

An appropriate order follows.

### ORDER

AND NOW, this 13th day of September, 2001, upon consideration of Defendant James T. William's March 10, 2000 Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody and Memorandum in Support thereof, and the Government's April 6, 2001 Response thereto, it is hereby ordered, consistent with the foregoing opinion, as follows:

(1) Defendant's Motion to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody, filed on March 10, 2000, is DENIED and DISMISSED and

(2) There are no grounds to issue a certificate of appealability